(No. 58415.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOHN A. KRANKEL, Appellee.

*Opinion filed May 25, 1984.*

Neil F. Hartigan, Attorney General, of Springfield, and Ronald C. Dozier, State's Attorney, of Bloomington (Mark L. Rotert and Michael V. Accettura, Assistant Attorneys General, of Springfield, of counsel), for the People.

Daniel D. Yuhas, Deputy Defender, and Gary R. Peterson, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellee.

JUSTICE CLARK delivered the opinion of the court:

The defendant, John A. Krankel, was charged by information in the circuit court of McLean County with

burglary, in that "on or about July 30, 1980, \*\*\* he knowingly and without authority, entered a building occupied by Isaac L. and Virginia T. Brown, with intent to commit therein a theft, in violation of Section 19—1, Chapter 38, Illinois Revised Statutes (1979)." The State made a motion to nol-pros the information, so that it could be replaced by a grand jury indictment which was filed on September 10, 1981, which charged the defendant with burglary using the same statement used in the information.

On March 1, 1982, the trial before a jury commenced. The State presented four witnesses: the defendant's ex-wife, Kelly Carr (Krankel), Mr. and Mrs. Isaac Brown, and a Morton police officer named Robert Huston. The defense did not present any evidence on the defendant's behalf.

Prior to trial, defense counsel made an oral motion *in limine* to exclude the testimony of defendant's ex-wife based upon the marital privilege (Ill. Rev. Stat. 1979, ch. 38, par. 155—1). The trial judge denied the motion *in limine,* and no issue was raised on appeal in the appellate court or in this court as to the admissibility of defendant's ex-wife's testimony.

The jury found the defendant guilty of burglary, and the trial judge sentenced the defendant to an extended-term sentence of 14 years, to run consecutively to sentences the defendant had already received in Peoria and Bureau counties. The defendant did not present any evidence on his behalf at the sentencing hearing.

On appeal before the appellate court, the defendant raised four issues. They were: (1) whether he was proved guilty beyond a reasonable doubt; (2) whether he was denied the effective assistance of counsel; (3) whether the trial court erred in failing to appoint counsel other than defendant's originally appointed counsel to argue his *pro se* motion alleging ineffective assistance of counsel; and

(4) whether the trial court erred in imposing a 14-year extended-term sentence to run consecutively to his other convictions. The appellate court held that the trial court had erred in denying defendant's *pro se* motion for a new trial based on the fact that his appointed counsel failed to investigate an alibi witness on his behalf. (113 Ill. App. 3d 992.) In view of its disposition of the second issue, the appellate court did not address the other issues raised by the defendant. The State filed a petition for leave to appeal with this court pursuant to our Rule 315(a) (87 Ill. 2d R. 315(a)), and we granted the State's petition.

On appeal before this court, the State only raises one issue. The State asserts that because the defendant failed to establish that he had been denied effective assistance of counsel the appellate court erred in reversing his conviction.

A summary of the pertinent facts is as follows. Isaac Brown testified that he and his wife were in their backyard in Hudson gardening and mowing the grass during the early evening hours of July 30, 1980. The front door of their house was unlocked. On July 31, 1980, Mrs. Brown discovered that her wallet, containing several credit cards and a small amount of cash, was missing. After searching for the wallet, the Browns decided that perhaps it had fallen into a wastepaper basket that was located next to the desk where the wallet was last seen. The garbage had been picked up the morning of July 31, 1980, and they assumed it would be impossible to retrieve the wallet. Consequently, the Browns did not report the missing wallet at that time.

Mr. Brown did become concerned that his wife's wallet may have been stolen, however, when he received a Visa credit card bill in August of 1980 listing a purchase of a color television set. Mr. Brown then contacted Visa to notify them about the missing card and the unauthor-

ized purchase.

In January of 1981, Mr. Brown received a phone call from Detective Huston of Morton, inquiring as to whether his Visa credit card had been stolen. Mr. Brown told Huston he believed his credit card had been stolen after Huston showed him the credit card receipt from the K-Mart store in Morton for the purchase of a color television set on July 30, 1980. Both Mr. and Mrs. Brown stated that they had not been in the K-Mart store in Morton in July of 1980 and that they had not signed the sales receipt or authorized the signature which appeared on the sales receipt. Detective Huston advised them to file a police report, which they did, with the McLean County sheriff's department.

Kelly Carr (Krankel), the defendant's ex-wife, was the State's key witness. Carr testified that she married the defendant on April 13, 1979, and divorced him on April 9, 1981, three months after he was charged with the offense involved in this appeal. Carr testified that she and the defendant and their children lived in Morton in July of 1980 and that on July 30, 1980, the defendant and Carr drove to McLean County, exiting from Interstate 74 at the Goodfield exit and driving to Hudson. Carr stated that after the defendant saw that some people were in their backyard he pulled into their driveway. The defendant then left the car, walked through the open garage door, knocked on the door in the garage which led into the house and, having received no response, entered the house. After a couple of minutes, Carr testified, the defendant reappeared carrying a wallet in his bib overalls. The defendant then drove from Hudson back to Morton to a K-Mart store. Carr, the defendant, and their two children went into the K-Mart store, where they purchased a color television set with the Visa card that was in the wallet. Carr stated that she forged the signature of "I. L. Brown" on the sales

receipt. The defendant and Carr took the television set to their home, where it remained for a couple of weeks until the defendant sold it to a friend.

The first time Carr spoke to the police concerning the incident described above was in January of 1981, although Carr testified that the police had wanted to talk to her in October of 1980. Carr stated that she did not talk to the police because she was pregnant with their youngest child and was worried about losing it. It was not until the child had its six-week checkup that she contacted the police. Carr admitted that, when she first spoke to Detective Huston in January of 1981, she denied any knowledge of the burglary. Later, she testified, she did admit being in the K-Mart store, but denied knowing where the credit card came from. Still later, Carr told Detective Huston how she and the defendant had obtained the credit card from a house in Hudson. Carr had retained an attorney to commence divorce proceedings at the time she admitted the crime to Huston. On cross-examination, Carr admitted she had been having difficulty serving the defendant in the divorce action, but denied contacting the police in January for the purpose of obtaining service of process upon the defendant. Carr was prosecuted for forgery in Tazewell County for signing the credit card slip. She was placed in the deferred-prosecution first-offender program, which she completed successfully.

Carr testified that she could not recall the defendant telling her that he had been stuck in the mud on the river bank in Pekin on July 30, 1980, but she did remember that she and the defendant had been stuck in the mud on another occasion in the summer of 1980. This testimony pertains to defendant's claim that he had an alibi defense.

Detective Huston also testified for the State. He stated that he had been contacted by Sergeant Poynter

of Peoria regarding the unauthorized purchase of the color television set. Sergeant Poynter had received information regarding the television from Kevin Carr, defendant's ex-brother-in-law. After Poynter contacted Huston, Huston spoke to Kelly Carr. Huston testified that he then called the Browns to advise them to file their police report with the authorities in McLean County. Huston also testified that, when he first spoke to Kelly Carr, she had denied any knowledge of where the card came from, but did admit forging the signature. Later, he testified, she did tell him the other information regarding how the credit card was obtained.

Following Huston's testimony, the State rested. The defendant then made a motion for a directed verdict, which was denied. Defense counsel gave an opening statement and then rested. There was then a jury-instructions conference, followed by the closing arguments of the State and the defense. The jury found the defendant guilty of the offense of burglary.

One month after the trial, March 17, 1982, defense counsel filed a motion for a new trial. On April 5, 1982, defendant filed a *pro se* motion for a new trial which repeated the assertions of defense counsel's motion, but added the issue of ineffective assistance of counsel based on defense counsel's alleged refusal to set forth the defense of alibi and alleged failure to investigate the defendant's whereabouts at the time of the offense.

On April 14, 1982, a hearing was held on the post-trial motions. The trial judge stated, "I have previously talked off the record with the Defendant and he has requested an opportunity to make argument on a pro se post-trial motion and it is my opinion that he should be granted an opportunity to make his own argument on that, if he desires to do so." Defense counsel, in response stated:

"Judge, I have problems. What I would like to do at this time is move to continue my post-trial motion that I filed and I don't know what Mr. Krankel's position is but that his would be continued. In his post-trial motion, he alleges ineffective assistance of counsel. I have talked with Mr. Skelton in the Public Defender's office and I think he is entitled to counsel and if we were assigned another Public Defender to assist him in that—also the problem I have—I should say it is Mr. Krankel's problem—he has been incarcerated for a long time and we are not prepared for sentencing at this time. We are also making an effort to basically obtain character references and character letters on his behalf and we have had some problems due to his incarceration. And he is not a local resident. That has been a problem and we would waive any right to a prompt sentencing."

The trial judge denied defense counsel's motion for a continuance.

The defendant was given the opportunity to present his argument on his *pro se* motion. In arguing his motion, the defendant stated:

"On the effective assistance of counsel, the Defendant feels had he received proper counsel he would have had a defense that would have kept the jury from bringing a verdict of guilty back for the reasons as follows:

The court appointed a Public Defender for the Defendant's being financially unable to acquire counsel, that Public Defender being Michael O'Rourke. Approximately five months prior to the Defendant's trial by jury, he informed his attorney of the affirmative defense and how to obtain his alibi. The Defendant even contacted the witness to tell him his attorney would be contacting him. Mr. O'Rourke failed not only to contact the alibi witness but to even claim the affirmative defense which the Defendant learned of after the State had rested their case at trial. It is believed by the Defendant the affirmative defense was a very crucial part of his defense, and so on grounds of the Defendant's having ineffective assistance of counsel, he asks the court to grant his motion

for a new trial."

Both defense counsel's and the defendant's motions for a new trial were denied.

In their briefs, both the State and the defendant agree that the defendant should have had counsel, other than his originally appointed counsel, appointed to represent him at the post-trial hearing in regard to his allegation that he had received ineffective assistance of counsel. We agree with the parties and remand this matter for a new hearing on the defendant's motion for a new trial with appointed counsel other than his originally appointed counsel. If, after the hearing, the judge finds that the defendant did not in fact receive effective assistance of counsel based upon counsel's alleged failure to present a valid alibi defense, then he shall order a new trial. If, however, he determines that the defendant received the effective assistance of counsel, he shall deny a new trial and leave standing defendant's conviction and sentence for burglary. If the circuit court denies defendant a new trial, defendant can still appeal to the appellate court based on his assertion of ineffective assistance of counsel or the other three issues which were raised in the appellate court and in this court but were not addressed.

Since we do not agree that a new trial should have been granted until there had been a hearing with newly appointed counsel wherein the trial court could determine whether the defendant had been denied the effective assistance of counsel, we vacate the judgment of the appellate court which reversed the circuit court and remanded for a new trial and we remand for a new hearing on the defendant's assertion of ineffective assistance of counsel.

*Judgment vacated; cause*
*remanded, with directions.*