FIRST DIVISION
July 15, 2010

No. 1-07-2889

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 04 CR 5493 |
| | ) | |
| THOMAS WALKER, | ) | Honorable |
| | ) | Dennis A. Dernbach, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Following a jury trial, defendant Thomas Walker was convicted of first degree murder and sentenced to 65 years in prison. On appeal, defendant contends that: (1) the trial court misled the jury and coerced a verdict; (2) the trial court failed to ensure all the jurors understood and accepted principles that are fundamental to a fair trial; (3) the trial court failed to inquire into defendant's *pro se* ineffective assistance of counsel claim; and (4) the mittimus incorrectly states defendant was adjudged guilty of two counts of first degree murder.

For the reasons that follow, we affirm defendant's first degree murder conviction and sentence but correct the mittimus to reflect a single conviction for murder.

I. BACKGROUND

Defendant was charged with committing the murder of Juliette Robinson. The State's witnesses testified that defendant shared a home with Juliette and, on the evening of February 4, 2004, entered her bedroom while she was sleeping. Defendant and Juliette's 11-year-old son,

Thomas Walker III, was also sleeping in Juliette's room. Defendant was carrying a loaded revolver and argued with Juliette. Defendant summoned his 15-year-old stepdaughter, Dionne Robinson, into the room and told her to tie up her brother, but she refused. Defendant then accused Juliette of having an affair and an argument ensued. When defendant reached for a tape recorder he had hidden behind Juliette's bed, Juliette fled the room and defendant fired two gunshots at her. She continued to run through the living room and out the front door while defendant shot at her. She was killed by a single gunshot wound to the back and collapsed at the bottom of the outside stairs. Defendant fled the scene and was later arrested at a hospital where he was being treated for a failed suicide attempt.

Thomas Walker III and Dionne testified consistently about the events that evening. Dionne also added that when defendant summoned her into the room, he was waving a gun and said that someone in the room was going to die that night. Furthermore, defendant started shooting at Juliette while she was still in the bedroom. Dionne heard two shots in the bedroom, two outside the bedroom, and two more after that. After Dionne summoned the police, she ran outside to check on her mother and saw defendant get in his van and drive away.

Alberta Randall, who lived across the street from the crime scene, testified that she heard defendant and Juliette arguing on the night of the offense. Next, Randall heard a gunshot and saw Juliette fall down her front stairs. Then, defendant ran down the same stairs with a gun in his hand, got in his van and drove away.

A police investigation unit processed the crime scene. The unit observed bullet holes in the walls and holes from bullets that had passed through a door before going into the wall. The

unit, however, was unable to retrieve any bullet fragments, which might have passed through the drywall and dropped down into the hollow portion of the wall. Furthermore, the lack of bullet casings at the scene indicated that the offender probably used a revolver.

Defendant testified on his own behalf. He claimed he did not have a gun when he entered Juliette's bedroom on the night of the offense. According to defendant, he went into Juliette's room to talk about the problems they were having, but she started yelling. Defendant remembered reaching into a dresser drawer to look for his hidden tape recorder but instead grabbed Juliette's gun. He claimed the gun was already cocked when he took it out of the drawer. While he was reaching for the tape recorder with his empty hand, Juliette jumped up, ran past him and pushed the gun that was in defendant's other hand. The gun went off, and defendant claimed he could not remember the subsequent events clearly.

The jury found defendant guilty of first degree murder and found that he personally discharged a weapon which proximately caused the death of the victim. Defendant was sentenced to 40 years on the charge of first degree murder to be served consecutively to a sentence of 25 years based on the jury's finding that defendant personally discharged a firearm that caused the victim's death. Defendant timely appealed.

## II. ANALYSIS

### A. Coercion of the Verdict

Defendant contends comment by the judge midway through the two-day jury trial withheld the option of a deadlock and coerced a verdict. The challenged comment was as follows:

"We still intend to complete this trial on Thursday, which means that once you start deliberating, you'll continue to work until you reach a verdict ***."

The State contends the defendant's argument is forfeited because defendant failed either to contemporaneously object or to raise this issue in a posttrial motion. People v. Enoch, 122 Ill. 2d 176, 186 (1988). Defendant responds that we should relax the waiver rule because the basis for the objection is the trial judge's conduct. The rationale for the relaxation of the waiver rule when the conduct of the judge is at issue derives from " 'the fundamental importance of a fair trial and the practical difficulties involved in objecting to the conduct of the trial judge.' " People v. Brown, 200 Ill. App. 3d 566, 575 (1990), quoting People v. Heidorn, 114 Ill. App. 3d 933, 936 (1983). Keeping in mind that the waiver rule is relaxed when the objection is based on the judge's conduct, we find exception to the waiver rule applicable here. Accordingly, we will address defendant's argument. We note the alleged error implicated defendant's right to a fair trial, thus the question is a legal one which we review *de novo.* People v. Ramos, 396 Ill. App. 3d 869, 878-79 (2009).

Defendant argues that the comment by the judge to the jury – "you'll continue to work until you reach a verdict" – essentially ordered a unanimous verdict and ruled out the possibility of a hung jury. In support of this argument defendant relies on People v. Gregory, 184 Ill. App. 3d 676 (1989), People v. Ferro, 195 Ill. App. 3d 282, 292-93 (1990), and United States v. Arpan, 861 F.2d 1073, 1077 (8th Cir.1988). Unlike the instant case, these cases challenge responses by the trial courts to jury questions once the jury reached a standstill in the deliberation process. Rather, the comments by the trial court in the instant case, which occurred midway through the

trial process, simply conveyed a schedule timeline for the remainder of the proceedings to allow jurors to make the appropriate plans, bring any required medications and make any necessary notifications. In context the comment by the judge was as follows:

"Ladies and gentlemen, that's going to conclude the evidence you're going to hear today. As I told you when you were selected yesterday, because of prior scheduling of other matters, we will not hear evidence tomorrow.

We will ask you to be back here on Thursday at 10:30 in the morning, and I will do everything possible to start closer to on time than we did today.

We still intend to complete this trial Thursday, which means that once you start deliberating, you'll continue to work until you reach a verdict so that you will let people know about that. And should you need medications or something like that, bring them with you so you don't run into these problems, okay?"

We note that those comments were not made to a deliberating jury or to a jury about to begin deliberations. The record does not reflect any indication by the trial judge that the jurors would be held indefinitely. The record does not reflect any coercion by the experienced trial judge. We reject defendant's argument that the comments by the judge coerced a unanimous verdict or misled the jury. Rather, the judge was giving the jurors information regarding scheduling they needed to know to make necessary plans and notifications before any deliberation began.

## B. Compliance with Supreme Court Rule 431(b)

Defendant argues his conviction must be reversed and this case remanded for a new trial

because the trial court failed to fully comply with Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007). We review the trial court's compliance with a supreme court rule *de novo*. People v. Suarez, 224 Ill. 2d 37, 41-42 (2007).

Our constitutions guarantee a defendant a fair trial by an impartial jury. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §8; People v. Strain, 194 Ill. 2d 467, 475 (2000). A defendant's right to a fair trial by an impartial jury requires jurors to be selected through the process of *voir dire* who are free from bias and prejudice. People v. Zehr, 103 Ill. 2d 472, 477 (1984).

Rule 431(b) codifies our supreme court's holding in People v. Zehr, 103 Ill. 2d 472, 477 (1984), requiring that four inquiries be made of potential jurors in a criminal case to determine whether a particular bias or prejudice would deprive the defendant of his right to a fair and impartial trial. This appeal is governed by the current version of Rule 431(b), which requires the trial court to issue the Zehr admonitions and inquiries *sua sponte*. Specifically, the trial court must ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent; (2) that the State must prove him guilty beyond a reasonable doubt; (3) that he is not required to present evidence on his own behalf; and (4) that his decision not to testify may not be held against him; however, no inquiry of a prospective juror is made into the defendant's failure to testify when the defendant objects. Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.

Defendant claims the trial court failed to question one juror concerning whether he

understood and accepted any of the four Rule 431(b) principles. Specifically, defendant claims the judge failed to question the twelfth juror, Guerrero N., about any of the four principles. The record, however, establishes that there is no merit to defendant's claim.

According to the record, the judge conducted *voir dire* by individually interviewing several venire members and then asking the group if they agreed with certain principles and eliciting their answers. After jurors were selected from a group, the judge instructed them to return the next morning for the start of the trial and excused them for the day. The court examined three more groups in the same manner.

The court then called nine more venire members. From this group, the judge first examined Guerrero N., followed by Jeanine F. and Theresa H. The judge, however, excused Theresa H. due to an issue that affected her ability to be fair and impartial. Thereafter, the judge examined Janine S. and John H. Theresa H. was excused and four venire members remained. The judge said, "Okay. To the four of you, I'm going to ask a series of questions you heard me ask other jurors." At that point, the judge questioned the four venire members, which included Guerrero N., about certain Rule 431(b) principles. Accordingly, the record rebuts defendant's claim that the court failed to question Guerrero N.

Next, defendant argues the trial court committed reversible error when it failed to question all the jurors concerning the principle that a defendant is not required to offer any evidence on his own behalf. Defendant concedes that he failed to raise this objection during the trial or in a post-trial motion but argues that he has not forfeited review of the trial court's error because a violation of the current version of Rule 431(b), which makes Zehr questioning

1-07-2889

mandatory, requires automatic reversal.

We do not adopt the position that the failure to comply with Rule 431(b) automatically denies a defendant a substantial right and thus a fair trial. Rather, we consider a Rule 431(b) error in the context of the particular facts of an individual case to determine whether the error was harmless or plain error. See People v. Herron, 215 Ill. 2d 167, 181-82 (2005).

This factual analysis is consistent with our supreme court's approach in People v. Glasper, 234 Ill. 2d 173, 200 (2009). In Glasper, the trial court violated the previous version of Rule 431(b) by denying the defendant's request to question the venire as to the Zehr principles. The Glasper court held that the trial court's error did not require automatic reversal and was subject to harmless error review because it was not structural. Glasper, 234 Ill. 2d at 200. We are mindful however, that Glasper emphasized "that this holding is limited to the version of Rule 431(b)(4) that was in effect at the time of the instant trial, and would not necessarily apply to subsequent versions of the rule." Glasper, 234 Ill. 2d 173, 200 (2009). The court further made "clear that we are not holding that a Rule 431(b)(4) violation could never result in reversible error." Glasper, 234 Ill. 2d 173, 200 (2009).

Significantly, the court in Glasper recognized the importance of a factual analysis, concluding that "[i]f the facts in this case demonstrated that the trial court's failure to question the venire in accordance with Rule 431(b)(4) resulted in defendant being tried before a biased jury, we would not hesitate to reverse defendant's conviction, as a trial before a biased jury would constitute structural error." Glasper, 234 Ill. 2d 173, 200-01 (2009). We note the issue of whether failure to comply with the 2007 version of Rule 431(b) can be considered harmless error

8

1-07-2889

is currently pending before the Illinois Supreme Court in People v. Thompson, No. 109033. The State's petition for leave to appeal from the order in People v. Thompson, No. 1-07-2891, July 16, 2009 (unpublished order pursuant to Supreme Court Rule 23) was allowed on November 25, 2009.

In the instant case defendant seeks review under the plain error doctrine (People v. Enoch, 122 Ill. 2d 176, 186 (1988)); accordingly, we need not undertake a harmless error analysis. The defendant did not object to the admonitions at trial or raise the alleged Rule 431(b) violation in a posttrial motion. Unpreserved issues can be reviewed as plain error under two circumstances: (1) if the evidence is closely balanced and the jury's guilty verdict may have resulted from the error; or (2) if the error was so fundamental and of such magnitude that the defendant was denied a fair trial and the error must be remedied to preserve the integrity of the judicial process. People v. Hudson, 228 Ill. 2d 181, 190-91 (2008); People v. Herron, 215 Ill. 2d 167, 177 (2005).

In order to conduct a plain error analysis, we must first determine whether error occurred. People v. Sims, 192 Ill. 2d 592, 621 (2000). Defendant asserts, the State concedes and the record confirms that the trial court omitted questioning the venire members about one of the Rule 431(b) principles. Specifically, the judge asked each group of venire members whether they understood and agreed that defendant was presumed innocent. Each group of venire members answered "yes." Then, the judge asked each group whether they understood and agreed that the burden was on the State to prove defendant guilty beyond a reasonable doubt. Each group answered "yes." Then, the judge asked each group whether they understood and agreed that defendant had a right to testify or remain silent, and if he chose to remain silent, that fact could

9

not be used against him in any way. Again, each group answered "yes." The judge, however, did not ask the panels of prospective jurors if they understood and accepted the principle that defendant was not required to offer any evidence on his own behalf. Therefore, error occurred here.

Defendant, who does not argue that the evidence here was closely balanced, asserts that under the second prong of plain error, the court's failure to strictly comply with Rule 431(b) denied him the right to a fair trial by an impartial jury. Defendant cites Zehr for the proposition that each question regarding the basic guarantees " 'goes to the heart of a particular bias or prejudice which would deprive defendant of his right to a fair and impartial jury.' " Zehr, 103 Ill. 2d at 477, quoting People v. Zehr, 110 Ill. App. 3d 458, 461 (1982).

This court has consistently found that incomplete Zehr admonitions constitute error, although divergent opinions have emerged as to whether such error is reversible. Compare, *e.g.*, People v. Wheeler, No. 1-08-1370 (March 31, 2010) (violation of Rule 431(b) did not warrant new trial), with People v. Anderson, No. 1-07-1768 (March 29, 2010) (court's failure to fully comply with Rule 431(b) required new trial). Along with Anderson, this court has found reversible error under the second prong of plain error, *i.e.*, deprivation of fair trial in People v. Blair, 395 Ill. App. 3d 465, 478 (2009), where even though the trial court informed the venire of each Zehr principle, the court did not ask potential jurors if they understood and accepted each principle. See also People v. Owens, 394 Ill. App. 3d 147, 153-54 (2009); People v. Graham, 393 Ill. App. 3d 268, 276 (2009).

We note that People v. Wilmington, 394 Ill. App. 3d 567 (2009), addressed the argument

1-07-2889

that the trial court's failure to strictly comply with Rule 431(b) by not asking jurors about the defendant's right to not testify was reversible error. Wilmington, 394 Ill. App. 3d at 572. In Wilmington the defendant did not testify. In the factual context of the Wilmington case, we concluded that the "failure to conduct a complete admonition in accordance with Rule 431(b) denied defendant the right to a fair and impartial jury, which is a substantial right, and therefore constituted plain error." Wilmington, 394 Ill. App. 3d at 575.

While we find Wilmington well reasoned, its factual differences distinguish it from the instant case. Unlike Wilmington, here the defendant did testify and did present evidence in the context of his own testimony when he took the witness stand. In the instant case, the court's failure to ask jurors whether they understood and accepted that the defendant was not required to offer evidence on his own behalf did not deprive the defendant of a fundamental right or affect the integrity of the judicial process. Rather than adopting a bright-line rule elevating form over substance and presuming noncompliance with Rule 431(b) automatically deprives defendant of a fair trial, we take into consideration the factual context of this case. We conclude the missing admonition did not deprive defendant of a fair trial because the defendant did in fact testify and did in fact offer evidence at trial by taking the witness stand in his own defense. See Glasper, 234 Ill. 2d 173, 200-01 (particular facts should be reviewed on a case-by-case basis, rather than presuming noncompliance automatically deprives defendant of a fair trial). Defendant's testimony, together with the evidence offered by the defendant taking the witness stand in his own defense, provides facts in this case which demonstrate that the trial court's failure to strictly comply with Rule 431(b) did not result in defendant being tried before a biased jury.

11

Accordingly, we reject the defendant's argument that under the second prong of the plain error analysis the court's failure to strictly comply with Rule 431(b) deprived him of the right to a fair trial by an impartial jury.  The error in the factual context of the instant case was not so fundamental and of such a magnitude that defendant was denied a fair trial. The error did not undermine the integrity of the judicial process.  For the reasons previously discussed, the record reflects no plain error.

We note that compliance with Rule 431(b) continues to be raised on appeal in a large number of cases in every district of the Illinois Appellate Court.  To potentially eliminate the compliance issues, we would recommend the approach discussed in the well-written article by Geoffrey Burkhart. G. Burkhart, *Voir Dire in Criminal Cases - Rule 431(b) Guidance for Lawyers & Judges*, 98 Ill. B.J. 86, 87 (February 2010); see People v. McCovins, No. 1-08-1805 (March 4, 2010).  As recommended by Burkhart, compliance with Rule 431(b) requirements can be satisfied if trial judges address all four principles one at a time, ask whether the prospective jurors both *understand and accept* each of the principles and require a verbal response to that inquiry. 98 Ill. B.J. at 87.  More specifically, as suggested in the Burkhart article, this can be accomplished by using the following script:

> "Ladies and gentlemen, I am required to discuss with you four principles of criminal law.  After I read each principle, I will ask each of you two questions: one, do you understand the principle, and two, do you accept the principle.  Please respond 'yes' or 'no' to each question.

Here is the first principle: The defendant is

presumed innocent of the charges against him. Juror

Number 1, do you understand that principle? [Await the

juror's verbal response.] Juror Number 1, do you accept

that principle? [Await the juror's verbal response.] Juror

Number 2, do you understand that principle?

And so on." 98 Ill. B.J. at 87-88.

In the same manner the potential jurors should be asked about understanding and accepting the other three Rule 431(b) principles. Specifically, the trial judge should state: Here is the second principle – before a defendant can be convicted, the State must prove the defendant guilty beyond a reasonable doubt. Juror Number 1, do you understand that principle? (Await the juror's verbal response.) Juror Number 1, do you accept that principle? (Await the juror's verbal response). That two-step inquiry should be repeated with each of the potential jurors.

The third and fourth principle should be similarly discussed. Specifically, the trial judge should state, Here is the third principle: the defendant is not required to offer any evidence on his or her own behalf. Juror Number 1, do you understand this third principle? (Await the juror's verbal response.) Juror Number 1, do you accept that principle? (Await the juror's verbal response.) That two-step inquiry should be repeated with each of the potential jurors.

The fourth principle should be discussed. Specifically, the trial judge should state, Here is the fourth principle: the defendant's failure to testify cannot be held against the defendant. Juror Number 1, do you understand this fourth principle? (Await the juror's verbal response.)

13

Juror Number 1, do you accept that principle? (Await the juror's verbal response.) That two-step inquiry should be repeated with each of the potential jurors; however "no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects." 177 Ill. 2d R. 431(b).

This approach is one possible method of conducting voir dire, and we are mindful that other methods can satisfy the requirements of Rule 431(b). We note that by questioning each individual juror about each Rule 431(b) principle, the above-suggested method of inquiry provides each juror an opportunity to respond to specific questions concerning the principles set out in Rule 431(b). This method of inquiry further ensures that the court asks each potential juror whether that juror understands and accepts the Rule 431(b) principles. Although Rule 431(b) provides that such inquiry may be conducted "individually or in a group," the above-suggested individual method of inquiry leaves no doubt that the substance and spirit of Rule 431(b) have been satisfied.

C. Inquiry Regarding Defendant's Claim of Ineffective Assistance of Counsel

Defendant argues that the trial court failed to conduct an adequate inquiry into the defendant's pretrial *pro se* claims that "he did not trust appointed counsel and did not want counsel defending his interests."

The trial court is required to inquire into a defendant's pretrial *pro se* claims of ineffective assistance of counsel under the principles articulated in People v. Krankel, 102 Ill. 2d 181, 189 (1984). In People v. Krankel, defense counsel failed to contact an alibi witness or present an alibi defense at trial. Krankel, 102 Ill. 2d at 187. The defendant *pro se* challenged

14

posttrial his attorney's representation at trial. Krankel, 102 Ill. 2d at 187. The Illinois Supreme Court held that the trial court should have appointed alternate counsel to represent defendant at the posttrial hearing regarding his claim of ineffective assistance of counsel. Krankel, 102 Ill. 2d at 189. The case was remanded for a hearing on the defendant's motion with newly appointed counsel. Krankel, 102 Ill. 2d at 189.

The Illinois Supreme Court, in applying Krankel, recognized in People v. Nitz, 143 Ill. 2d 82, 134-35 (1991), "that there is no *per se* rule that new counsel must be appointed every time a defendant presents a *pro se* motion for a new trial alleging ineffective assistance of counsel." Nitz expressed that principle as follows:

> "If the trial court conducts a preliminary investigation of the
> defendant's allegations and determines them to be spurious or
> pertaining only to trial tactics, no new counsel should be appointed
> to represent the defendant. If, however, the defendant's allegations
> of incompetence indicate that trial counsel neglected the
> defendant's case, the court should appoint new counsel to argue
> defendant's claims of ineffective assistance of counsel." People v.
> Nitz, 143 Ill. 2d 82, 134-35 (1991).

A trial court is not required to appoint new counsel every time a defendant files a *pro se* motion claiming ineffective assistance of counsel. People v. Jocko, 389 Ill. App. 3d 247, 263 (2009), citing People v. Moore, 207 Ill. 2d 68, 80 (2003). Rather, the trial court should first examine the factual basis underlying the defendant's claim. Moore, 207 Ill. 2d at 77-78. This can

be accomplished in several ways. <u>Moore</u>, 207 Ill. 2d at 77-78.  The court could simply ask trial counsel about the circumstances surrounding the claim or ask defendant questions about his claim. <u>Moore</u>, 207 Ill. 2d at 78.  In the alternative, the court can base its determination on its personal knowledge of defense counsel's performance at trial or on the facial insufficiency of defendant's allegations.  <u>Moore</u>, 207 Ill. 2d at 78-79.  If a defendant's claim lacks merit or relates only to matters of trial strategy, the trial court may deny the motion without appointing new counsel. <u>Moore</u>, 207 Ill. 2d at 77-78.

If the trial court makes no determination of the merits of defendant's claim, then the standard of review is *de novo.* <u>Moore</u>, 207 Ill. 2d at 75.  If the trial court makes a determination on the merits, then the conduct of the trial court is reviewed under a manifest erroneous standard of review. <u>People v. McCarter</u>, 385 Ill. App. 3d 919, 941-42 (2008).  A trial court makes a determination on the merits by considering defendant's allegations and conducting adequate inquiry into the allegations. <u>People v. Ford</u>, 368 Ill. App. 3d 271, 276 (2006).  However, no inquiry by the trial court is required when a defendant fails to identify relevant facts and raises only general, conclusory allegations of ineffective assistance of counsel.

We are mindful of the relaxed pleading requirements for *pro se* allegations of ineffective assistance of counsel. See <u>Moore</u>, 207 Ill. 2d at 79 (to trigger an inquiry under <u>Krankel</u>, "a *pro se* defendant is not required to do any more than bring his or her claim to the trial court's attention").  We note that some minimum requirements must be satisfied by defendant in order to trigger preliminary inquiry by the trial court. <u>People v. Ward</u>, 371 Ill. App. 3d 382, 431 (2007). A bald allegation of ineffective assistance is insufficient; rather, the defendant should raise

16

specific claims with supporting facts before the trial court is required to consider the allegations. People v. Radford, 359 Ill. App. 3d 411, 418 (2005). Defendant's allegations that are conclusory, misleading or legally immaterial, or do not identify a colorable claim of ineffective assistance of counsel would not require further inquiry by the trial court. People v. Johnson, 159 Ill. 2d 97, 126 (1994); People v. Ford, 368 Ill. App. 3d 271, 276 (2006) (remand for further inquiry was not necessary where the defendant's allegations were facially insufficient, set forth in a general and conclusory manner, and contradicted by other allegations, by facts on the record and by the prosecutor).

In the instant case, during the pretrial status date on February 27, 2007, defense counsel informed the trial court that defendant intended to reject the trial court's plea offer. Regarding defense counsel's representations, defendant then said, "I'm rejecting you. I don't trust you. You are the devil. You are the devil. That's what you is, the devil. I don't trust you." We are mindful that defendant was medicated for a psychiatric condition, including a delusional disorder and found fit for trial with medication one month before the February 27, 2007, pretrial status date.

The trial court responded, "Mr. Walker?" Defendant replied, "I don't trust him. He is sneaky." The judge then explained that the trial court, not defense counsel made the plea offer. Defendant then stated, "I don't want to go to trial with him. I don't trust him." The trial judge responded, "Well, he's your lawyer. Now, when can we try this case." Defendant made no further comment and the case was set for trial on April 3, 2007. The case was continued several times and trial began on July 9, 2007.

1-07-2889

These comments were not repeated during the five months of time which elapsed from February 27, 2007, until July 9, 2007, when trial began. Moreover, these comments were not repeated during the trial process. We also note that defendant did not articulate a specific complaint against the competence of defense counsel and no claim of ineffective assistance of counsel has been argued on appeal. Accordingly, the record reflects that defendant's general, conclusory comments did not bring to the trial court's attention a specific claim with supporting facts of ineffective assistance of counsel and, therefore, the trial court was not required to conduct further inquiry.

### D. Mittimus

Defendant contends the mittimus should be corrected to accurately reflect a single conviction for first degree murder. The mittimus reflects two convictions for first degree murder: (1) intentional and knowing murder where defendant intentionally killed the victim and during the commission of the offense personally discharged a firearm that proximately caused death, and (2) defendant shot the victim knowing that such an act created a strong probability that his actions would result in death or great bodily harm and during the commission of the offense personally discharged a firearm that proximately caused death. When multiple murder convictions have been entered for the same act, only the conviction for the most serious charge should be reflected on the mittimus, and convictions on the less serious charges must be vacated. People v. Cardona, 158 Ill. 2d 403, 411 (1994). In the instant case, the conviction for knowing and intentional murder is the conviction for the most serious charge. See People v. Cardona, 158 Ill. 2d at 411.

18

1-07-2889

Under Illinois Supreme Court Rule 615(b)(1), as the reviewing court we may "reverse, affirm or modify the judgment or order from which the appeal is taken." 134 Ill. 2d R. 615(b)(1). Remand is unnecessary since we have the authority to directly order the clerk of the circuit court to make the necessary corrections to defendant's sentencing order. 134 Ill. 2d R. 615(b)(1); People v. McCray, 273 Ill. App. 3d 396, 403 (1995).

Accordingly, we direct the clerk of the circuit court to correct the mittimus to reflect a single conviction for the most serious charge of intentional and knowing murder where defendant intentionally killed the victim and during the commission of the offense personally discharged a firearm that proximately caused death. The defendant's conviction for shooting the victim knowing that such an act created a strong probability of death or great bodily harm shall be vacated by the clerk of the circuit court. The mittimus is to be corrected by the clerk of the circuit court to reflect a single conviction for intentional first degree murder pursuant to section 9-1(a)(1) of the Criminal Code of 1961 (720 ILCS 5/9-1(a)(1) (West 2008)).

Affirmed as modified.

O'BRIEN, J., concurs.

1-07-2889

GALLAGHER, J., specially concurring:

I specially concur to discuss briefly two points. First, in cases such as this where the defendant takes the stand, the court's failure to ask jurors whether they understand and accept that the defendant is not required to offer evidence does not deprive the defendant of a fundamental right or affect the integrity of the judicial process. An analogous situation would be where a defendant who has had a jury trial asserts that the trial court neglected to inform him of his right to a jury trial. Obviously no denial of any right occurs in that situation or in the instant one.

Another point I would like to emphasize is the method of complying with Rule 431(b). The majority correctly points out that the Rule itself says the court "shall ask each potential juror, individually or in a group" regarding the four admonitions. Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431, eff. May 1, 2007. Due to the tendency of some advocates to engage in literalism, I think it is important to emphasize a court need not question each individual venire member, as the majority suggests. The Rule itself says "as a group." That is a perfectly reasonable way to comply with the Rule and may be a better use of time than questioning each potential juror on each principle. I ask however that the trial court please read the Rule and comply with it in substance so as to eliminate the plethora of cases where compliance with Rule 431(b) is sadly lacking.