# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Walker*, 2011 IL App (1st) 072889-B

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS WALKER, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-07-2889 |
| Filed | September 1, 2011 |
| Rehearing denied | October 6, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for first degree murder, the trial court did not coerce the jury by telling the jurors that when they started deliberating they would continue to work until a verdict was reached, defendant did not meet his burden of proving that the trial court's failure to strictly comply with Supreme Court Rule 431(b) resulted in an unfair trial and affected the integrity of the judicial process, the trial court conducted an adequate inquiry into defendant's *pro se* pretrial claim of ineffective assistance of counsel, and the mittimus was corrected to reflect a single conviction for first degree murder. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 04-CR-5493; the Hon. Dennis A. Dernbach, Judge, presiding. |
| Judgment | Affirmed as modified. |

Counsel on
Appeal

Michael J. Pelletier, Patricia Unsinn, and Michael H. Orenstein, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (James E. Fitzgerald, Mary P. Needham, and Mikah Soliunas, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.[*]

Justices Salone and Sterba concurred in the judgment and opinion.[**]

## OPINION

¶ 1    Following a jury trial, defendant Thomas Walker was convicted of first degree murder and sentenced to 65 years in prison. On appeal, defendant contends that: (1) the trial court misled the jury and coerced a verdict; (2) the trial court failed to ensure all the jurors understood and accepted principles that are fundamental to a fair trial; (3) the trial court failed to inquire into defendant's *pro se* ineffective assistance of counsel claim; and (4) the mittimus incorrectly states defendant was adjudged guilty of two counts of first degree murder.

¶ 2    In an opinion filed on July 15, 2010, this court affirmed defendant's conviction and corrected his mittimus. *People v. Walker*, 403 Ill. App. 3d 68 (2010). Thereafter, on March 8, 2011, the Illinois Supreme Court issued a supervisory order directing this court to vacate its prior judgment and reconsider its prior ruling in light of *People v. Thompson*, 238 Ill. 2d 598 (2010). *People v. Walker*, 239 Ill. 2d 585 (2011) (table). On reconsideration, we again affirm defendant's first degree murder conviction and sentence but correct the mittimus to reflect a single conviction for murder.

---

[*]Following Justice O'Mara Frossard's retirement, Justice Pucinski delivered the judgment of the court, with opinion. Justice Pucinski has reviewed all relevant materials, including the court's original opinion filed on July 15, 2010, and the supervisory order issued by our supreme court on March 8, 2011.

[**]Pursuant to Justice O'Brien's retirement, Justice Salone has participated in the reconsideration of this case. Pursuant to Justice Gallagher's retirement, Justice Sterba has participated in the reconsideration of this case. Justice Salone and Justice Sterba have both reviewed all relevant materials, including the original opinion filed on July 15, 2010, and the supervisory order issued by our supreme court on March 8, 2011.

¶ 3                                        I. BACKGROUND

¶ 4        Defendant was charged with committing the murder of Juliette Robinson. The State's witnesses testified that defendant shared a home with Juliette and, on the evening of February 4, 2004, entered her bedroom while she was sleeping. Defendant and Juliette's 11-year-old son, Thomas Walker III, was also sleeping in Juliette's room. Defendant was carrying a loaded revolver and argued with Juliette. Defendant summoned his 15-year-old stepdaughter, Dionne Robinson, into the room and told her to tie up her brother, but she refused. Defendant then accused Juliette of having an affair and an argument ensued. When defendant reached for a tape recorder he had hidden behind Juliette's bed, Juliette fled the room and defendant fired two gunshots at her. She continued to run through the living room and out the front door while defendant shot at her. She was killed by a single gunshot wound to the back and collapsed at the bottom of the staircase. Defendant fled the scene and was later arrested at a hospital where he was being treated for a failed suicide attempt.

¶ 5        Thomas Walker III and Dionne testified consistently about the events that evening. Dionne also added that when defendant summoned her into the room, he was waving a gun and said that someone in the room was going to die that night. Furthermore, defendant started shooting at Juliette while she was still in the bedroom. Dionne heard two shots in the bedroom, two outside the bedroom, and two more after that. After Dionne summoned the police, she ran outside to check on her mother and saw defendant get in his van and drive away.

¶ 6        Alberta Randall, who lived across the street from the crime scene, testified that she heard defendant and Juliette arguing on the night of the offense. Next, Randall heard a gunshot and saw Juliette fall down her front stairs. Then, defendant ran down the same stairs with a gun in his hand, got in his van and drove away.

¶ 7        A police investigation unit processed the crime scene. The unit observed bullet holes in the walls and holes from bullets that had passed through a door before going into the wall. The unit, however, was unable to retrieve any bullet fragments, which might have passed through the drywall and dropped down into the hollow portion of the wall. Furthermore, the lack of bullet casings at the scene indicated that the offender probably used a revolver.

¶ 8        Defendant testified on his own behalf. He claimed he did not have a gun when he entered Juliette's bedroom on the night of the offense. According to defendant, he went into Juliette's room to talk about the problems they were having, but she started yelling. Defendant remembered reaching into a dresser drawer to look for his hidden tape recorder but instead grabbed Juliette's gun. He claimed the gun was already cocked when he took it out of the drawer. While he was reaching for the tape recorder with his empty hand, Juliette jumped up, ran past him and pushed the gun that was in defendant's other hand. The gun went off, and defendant claimed he could not remember the subsequent events clearly.

¶ 9        The jury found defendant guilty of first degree murder and found that he personally discharged a weapon that proximately caused the death of the victim. Defendant was sentenced to 40 years on the charge of first degree murder to be served consecutively to a sentence of 25 years based on the jury's finding that defendant personally discharged a firearm that caused the victim's death. Defendant timely appealed.

¶ 10                                    II. ANALYSIS

¶ 11                              A. Coercion of the Verdict

¶ 12      Defendant contends comment by the judge midway through the two-day jury trial withheld the option of a deadlock and coerced a verdict. The challenged comment was as follows:

> "We still intend to complete this trial on Thursday, which means that once you start deliberating, you'll continue to work until you reach a verdict ***."

¶ 13      The State contends the defendant's argument is forfeited because defendant failed either to contemporaneously object or to raise this issue in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Defendant responds that we should relax the waiver rule because the basis for the objection is the trial judge's conduct. The rationale for the relaxation of the waiver rule when the conduct of the judge is at issue is derived from " 'the fundamental importance of a fair trial and the practical difficulties involved in objecting to the conduct of the trial judge.' " *People v. Brown*, 200 Ill. App. 3d 566, 575 (1990) (quoting *People v. Heidorn*, 114 Ill. App. 3d 933, 936 (1983)). Keeping in mind that the waiver rule is relaxed when the objection is based on the judge's conduct, we find the exception to the waiver rule applicable here. Accordingly, we will address defendant's argument. We note the alleged error implicates defendant's right to a fair trial; thus the question is a legal one, which we review *de novo. People v. Ramos*, 396 Ill. App. 3d 869, 878-79 (2009).

¶ 14      Defendant argues that the comment by the judge to the jury–"you'll continue to work until you reach a verdict"–essentially ordered a unanimous verdict and ruled out the possibility of a hung jury. In support of this argument, defendant relies on *People v. Gregory*, 184 Ill. App. 3d 676 (1989), *People v. Ferro*, 195 Ill. App. 3d 282, 292-93 (1990), and *United States v. Arpan*, 861 F.2d 1073, 1077 (8th Cir. 1988). Unlike the instant case, these cases challenge responses by the trial courts to jury questions once the jury reached a standstill in the deliberation process. Rather, the comments by the trial court in the instant case, which occurred midway through the trial process, simply conveyed a schedule timeline for the remainder of the proceedings to allow jurors to make the appropriate plans, bring any required medications and make any necessary notifications. In context, the comment by the judge was as follows:

> "Ladies and gentlemen, that's going to conclude the evidence you're going to hear today. As I told you when you were selected yesterday, because of prior scheduling of other matters, we will not hear evidence tomorrow.
>
> We will ask you to be back here on Thursday at 10:30 in the morning, and I will do everything possible to start closer to on time than we did today.
>
> We still intend to complete this trial Thursday, which means that once you start deliberating, you'll continue to work until you reach a verdict so that you will let people know about that. And should you need medications or something like that, bring them with you so you don't run into these problems, okay?"

¶ 15      We note that those comments were not made to a deliberating jury or to a jury about to

begin deliberations. The record does not reflect any indication by the trial judge that the jurors would be held indefinitely. The record does not reflect any coercion by the experienced trial judge. We reject defendant's argument that the comments by the judge coerced a unanimous verdict or misled the jury. Rather, the judge was giving the jurors information regarding scheduling they needed to know to make necessary plans and notifications before any deliberation began.

¶ 16                     B. Compliance With Supreme Court Rule 431(b)

¶ 17        Defendant next argues his conviction must be reversed and this case remanded for a new trial because the trial court failed to fully comply with amended Supreme Court Rule 431(b) (Ill. S. Ct. R. 431(b) (eff. May 1, 2007))[1] *** because it failed to admonish the venire about each of the four principles enumerated therein. Specifically, defendant contends that the trial court failed to admonish the prospective jurors about the principle preserving a defendant's right not to present evidence on his behalf. Moreover, defendant contends that the trial court completely failed to question one juror about his acceptance of any of the principles. Although defendant acknowledges that he failed to properly preserve this issue for review, he urges this court to review his claim for plain error. He contends that the court's error necessarily deprived him of his right to a fair and impartial jury and thus constituted plain error under the second prong of plain error review.

¶ 18        To properly preserve an issue for appeal, a defendant must object to the purported error at trial and specify the error in a posttrial motion. *Enoch*, 122 Ill. 2d at 186; *People v. Bannister*, 232 Ill. 2d 52, 65 (2008). A defendant's failure to abide by both requirements results in forfeiture of appellate review of his claim. *Enoch*, 122 Ill. 2d at 186; *People v. Piatkowski*, 225 Ill. 2d 551, 564 (2007). Here, it is undisputed that defendant failed to object to the trial court's purported Rule 431(b) violations at trial or in a posttrial motion, and accordingly, we find that forfeiture applies.

¶ 19        The plain error doctrine, however, provides a limited exception to the forfeiture rule. Ill. S. Ct. R. 615(a); *Bannister*, 232 Ill. 2d at 65. It permits review of otherwise improperly preserved issues on appeal if the evidence is closely balanced or the error is of such a serious magnitude that it affected the integrity of the judicial process and deprived the defendant of his right to a fair trial. Ill. S. Ct. R. 615(a); *Bannister*, 232 Ill. 2d at 65. The first step in any such analysis is to determine whether any error actually occurred. *People v. Walker*, 232 Ill. 2d 113, 124-25 (2009). If an error is discovered, the defendant then bears the burden of persuasion to show that the error prejudiced him under either prong. *People v. McLaurin*, 235 Ill. 2d 478, 495 (2009).

¶ 20        Defendant's claim of error concerns the trial court's compliance with a supreme court rule, which is subject to *de novo* review. *People v. Suarez*, 224 Ill. 2d 37, 41-42 (2007);

_____

[1]Rule 431(b) codifies our supreme court's holding in *People v. Zehr*, 103 Ill. 2d 472, 477 (1984), requiring that four inquiries be made of potential jurors in a criminal case to determine whether a particular bias or prejudice would deprive the defendant of his right to a fair and impartial trial.

*People v. Haynes*, 399 Ill. App. 3d 903 (2010). To determine whether an error occurred in this case, we examine amended Rule 431(b) as well as our supreme court's recent opinion interpreting the rule (*People v. Thompson*, 238 Ill. 2d 598 (2010)). Rule 431(b) provides:

> "The court *shall* ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.
>
> The court's method of inquiry shall provide each juror an opportunity to respond to the specific questions concerning the principles set out in this section." (Emphasis added.) Ill. S. Ct. R. 431(b) (eff. May 1, 2007).

¶ 21    In *Thompson*, our supreme court observed the amended rule's use of the term "shall" created a mandatory question and response process to address a jury's acceptance of each of the four enumerated principles. *Thompson*, 238 Ill. 2d at 607; see also *Haynes*, 399 Ill. App. 3d at 912 (explaining that "[i]n enacting the amended version of Rule 431(b), our supreme court imposed a *sua sponte* duty on courts to ask potential jurors individually or in a group whether they accept the [four *Zehr*] principles").[2] A trial court's failure to inquire as to a potential juror's acceptance and understanding of all four principles constitutes error. See *Thompson*, 238 Ill. 2d at 607; *Haynes*, 399 Ill. App. 3d at 912; *People v. Magallanes*, 397 Ill. App. 3d 72, 83 (2009).

¶ 22    Here, in its prefatory comments to the entire venire, the trial court spoke about three of the four Rule 431(b) principles that governed defendant's trial, omitting the principle that the law does not require a defendant to present evidence on his behalf. Specifically, the court stated:

> "The defendant is presumed to be innocent of the charge in the indictment, and that presumption of innocence remains throughout the trial with the defendant unless or until you have been satisfied by the evidence in the case beyond a reasonable doubt as to the guilt of the defendant.
>
> The burden of proving the guilt of the defendant is on the State. The law does not require the defendant to prove his innocence.
>
> The defendant may or may not testify. And the fact that he does not testify in no way should be used as evidence against him."

¶ 23    Thereafter, during the *voir dire* process, the trial court asked different panels of jurors about their understanding and acceptance of the three *Zehr* principles pertaining to a defendant's presumption of innocence, the State's burden of proof, and the right of a

---

[2] Prior to the amendment, Rule 431(b) required questioning only "[i]f requested by defendant." (Internal quotation marks omitted.) See *Thompson*, 238 Ill. 2d at 608.

defendant not to testify or have his decision used against him. Although defendant contends that prospective juror Guerro N. was not questioned about his understanding and acceptance of any of the *Zehr* principles, the record does not support defendant's contention. The record demonstrates that the trial court called the names of nine venire members, including Guerro N., to be questioned. The trial court then questioned five of the venire members and excused one prospective juror when she indicated that she was unsure of her ability to remain fair and impartial during the case. The trial court then stated: "Okay. To the four of you, I am going to ask a series of questions you heard me ask other jurors." The trial court then inquired whether Guerro N. and the three other venire members understood the aforementioned three *Zehr* principles. Accordingly, the record rebuts defendant's claim that the court failed to question Guerro N.

¶ 24        More problematic, however, is that the trial court failed to question all of the prospective jurors about their understanding and acceptance of the *Zehr* principle preserving a defendant's right not to present evidence on his behalf. In our original opinion, we found that the trial court's incomplete Rule 431(b) admonishments constituted error, but that the error did not require reversal of defendant's conviction. *Walker*, 403 Ill. App. 3d at 74-76. Specifically, we rejected that the defendant's argument that a court's failure to fully comply with Rule 431(b) necessarily infringes on his right to a fair trial and constitutes plain error under the second prong of plain error review. *Walker*, 403 Ill. App. 3d at 76. On reconsideration, we do not find that the *Thompson* decision compels a different result.

¶ 25        In *Thompson*, our supreme court expressly rejected the argument that a trial court's failure to strictly comply with amended Rule 431(b) necessarily infringes upon a defendant's right to a fair and impartial jury and constitutes plain error under the second prong of plain error review. *Thompson*, 238 Ill. 2d at 614. The court acknowledged that "[a] finding that defendant was tried by a biased jury would certainly satisfy the second prong of plain-error review because it would affect his right to a fair trial and challenge the integrity of the judicial process," but explained that a reviewing court "cannot presume the jury was biased simply because the trial court erred in conducting the Rule 431(b) questioning." *Id*. The court acknowledged that the 2007 amendment to the rule made it mandatory for trial courts to assess every potential juror's acceptance of the four Rule 431(b) principles but explained:

> "[T]he failure to conduct Rule 431(b) questioning does not necessarily result in a biased jury, regardless of whether that questioning is mandatory or permissive under our rule. Although the amendment to the rule serves to promote the selection of an impartial jury by making questioning mandatory, Rule 431(b) questioning is only one method of helping to ensure the selection of an impartial jury. [Citation.] It is not the only means of achieving that objective. A violation of Rule 431(b) does not implicate a fundamental right or constitutional protection, but only involves a violation of this court's rules." *Id*. at 614-15.

¶ 26        Accordingly, because a trial court's Rule 431(b) violation does not necessarily result in a biased jury and constitute plain error, the court concluded that it was the defendant's burden of persuasion to show that the trial court's violation of Rule 431(b) in his case resulted in a biased jury and affected the integrity of the judicial process. *Id*. at 614. The court observed that although the prospective jurors in the defendant's case received some,

but not all, of the Rule 431(b) questions, the defendant failed to meet his burden of showing that the error affected the fairness of his trial and, accordingly, the second prong of plain error review did not provide a basis for excusing the defendant's forfeiture. *Id*. at 615.

¶ 27    Here, as in *Thompson*, the trial court failed to strictly comply with Rule 431(b). Specifically, the court only conducted an inquiry regarding three of the four *Zehr* principles and failed to ascertain whether the potential jurors understood and accepted that a defendant is not required to present evidence on his own behalf. Notwithstanding the trial court's error, we find that defendant has failed to prove that the trial court's Rule 431(b) violation resulted in an unfair trial and affected the integrity of the judicial process. Notably, there is nothing in the record to indicate that the jury was biased. Moreover, we observe that defendant did, in fact, present evidence on his behalf. Accordingly, we find that the second prong of plain error review does not provide us with a basis to excuse defendant's procedural default. See *Thompson*, 238 Ill. 2d at 614-15; *Haynes*, 399 Ill. App. 3d at 914; *Magallanes*, 397 Ill. App. 3d at 100. Defendant does not argue that the error constitutes plain error under the first prong, and we therefore find no basis to excuse defendant's procedural default under either prong of plain-error review.

¶ 28    C. Inquiry Regarding Defendant's Claim of Ineffective Assistance of Counsel

¶ 29    Defendant next argues that the trial court failed to conduct an adequate inquiry into the defendant's pretrial *pro se* claims that "he did not trust appointed counsel and did not want counsel defending his interests."

¶ 30    The trial court is required to inquire into a defendant's pretrial *pro se* claims of ineffective assistance of counsel under the principles articulated in *People v. Krankel*, 102 Ill. 2d 181, 189 (1984). In *Krankel*, defense counsel failed to contact an alibi witness or present an alibi defense at trial. *Krankel*, 102 Ill. 2d at 187. The defendant *pro se* challenged posttrial his attorney's representation at trial. *Krankel*, 102 Ill. 2d at 187. The Illinois Supreme Court held that the trial court should have appointed alternate counsel to represent defendant at the posttrial hearing regarding his claim of ineffective assistance of counsel. *Krankel*, 102 Ill. 2d at 189. The case was remanded for a hearing on the defendant's motion with newly appointed counsel. *Krankel*, 102 Ill. 2d at 189.

¶ 31    The Illinois Supreme Court, in applying *Krankel*, recognized in *People v. Nitz*, 143 Ill. 2d 82, 134 (1991), "that there is no *per se* rule that new counsel must be appointed every time a defendant presents a *pro se* motion for a new trial alleging ineffective assistance of counsel." *Nitz* expressed that principle as follows:

"If the trial court conducts a preliminary investigation of the defendant's allegations and determines them to be spurious or pertaining only to trial tactics, no new counsel should be appointed to represent the defendant. If, however, the defendant's allegations of incompetence indicate that trial counsel neglected the defendant's case, the court should appoint new counsel to argue defendant's claims of ineffective assistance of counsel." *People v. Nitz*, 143 Ill. 2d 82, 134-35 (1991).

¶ 32    A trial court is not required to appoint new counsel every time a defendant files a *pro se* motion claiming ineffective assistance of counsel. *People v. Jocko*, 389 Ill. App. 3d 247, 263

(2009) (citing *People v. Moore*, 207 Ill. 2d 68, 77 (2003)). Rather, the trial court should first examine the factual basis underlying the defendant's claim. *Moore*, 207 Ill. 2d at 77-78. This can be accomplished in several ways. *Moore*, 207 Ill. 2d at 77-78. The court could simply ask trial counsel about the circumstances surrounding the claim or ask defendant questions about his claim. *Moore*, 207 Ill. 2d at 78. In the alternative, the court can base its determination on its personal knowledge of defense counsel's performance at trial or on the facial insufficiency of defendant's allegations. *Moore*, 207 Ill. 2d at 78-79. If a defendant's claim lacks merit or relates only to matters of trial strategy, the trial court may deny the motion without appointing new counsel. *Moore*, 207 Ill. 2d at 77-78.

¶ 33    If the trial court makes no determination of the merits of defendant's claim, then the standard of review is *de novo*. *Moore*, 207 Ill. 2d at 75. If the trial court makes a determination on the merits, then the conduct of the trial court is reviewed under a manifest erroneous standard of review. *People v. McCarter*, 385 Ill. App. 3d 919, 941-42 (2008). A trial court makes a determination on the merits by considering defendant's allegations and conducting adequate inquiry into the allegations. *People v. Ford*, 368 Ill. App. 3d 271, 276 (2006). However, no inquiry by the trial court is required when a defendant fails to identify relevant facts and raises only general, conclusory allegations of ineffective assistance of counsel.

¶ 34    We are mindful of the relaxed pleading requirements for *pro se* allegations of ineffective assistance of counsel. See *Moore*, 207 Ill. 2d at 79 (to trigger an inquiry under *Krankel*, "a *pro se* defendant is not required to do any more than bring his or her claim to the trial court's attention"). We note that some minimum requirements must be satisfied by a defendant in order to trigger preliminary inquiry by the trial court. *People v. Ward*, 371 Ill. App. 3d 382, 431 (2007). A bald allegation of ineffective assistance is insufficient; rather, the defendant should raise specific claims with supporting facts before the trial court is required to consider the allegations. *People v. Radford*, 359 Ill. App. 3d 411, 418 (2005). A defendant's allegations that are conclusory, misleading or legally immaterial, or do not identify a colorable claim of ineffective assistance of counsel would not require further inquiry by the trial court. *People v. Johnson*, 159 Ill. 2d 97, 126 (1994); *People v. Ford*, 368 Ill. App. 3d 271, 276 (2006) (remand for further inquiry was not necessary where the defendant's allegations were facially insufficient, set forth in a general and conclusory manner, and contradicted by other allegations, by facts on the record and by the prosecutor).

¶ 35    In the instant case, during the pretrial status date on February 27, 2007, defense counsel informed the trial court that defendant intended to reject the trial court's plea offer. Regarding defense counsel's representations, defendant then said, "I'm rejecting you. I don't trust you. You are the devil. You are the devil. That's what you is, the devil. I don't trust you." We are mindful that defendant was medicated for a psychiatric condition, including a delusional disorder and found fit for trial with medication one month before the February 27, 2007, pretrial status date.

¶ 36    The trial court responded, "Mr. Walker?" Defendant replied, "I don't trust him. He is sneaky." The judge then explained that the trial court, not defense counsel, made the plea offer. Defendant then stated, "I don't want to go to trial with him. I don't trust him." The trial judge responded, "Well, he's your lawyer. Now, when can we try this case." Defendant made

no further comment and the case was set for trial on April 3, 2007. The case was continued several times and trial began on July 9, 2007.

¶ 37        These comments were not repeated during the five months of time which elapsed from February 27, 2007, until July 9, 2007, when trial began. Moreover, these comments were not repeated during the trial process. We also note that defendant did not articulate a specific complaint against the competence of defense counsel and no claim of ineffective assistance of counsel has been argued on appeal. Accordingly, the record reflects that defendant's general, conclusory comments did not bring to the trial court's attention a specific claim with supporting facts of ineffective assistance of counsel and, therefore, the trial court was not required to conduct further inquiry.

¶ 38                                                D. Mittimus

¶ 39        Finally, defendant contends the mittimus should be corrected to accurately reflect a single conviction for first degree murder. The mittimus reflects two convictions for first degree murder: (1) intentional and knowing murder where defendant intentionally killed the victim and during the commission of the offense personally discharged a firearm that proximately caused death, and (2) defendant shot the victim knowing that such an act created a strong probability that his actions would result in death or great bodily harm and during the commission of the offense personally discharged a firearm that proximately caused death. When multiple murder convictions have been entered for the same act, only the conviction for the most serious charge should be reflected on the mittimus, and convictions on the less serious charges must be vacated. *People v. Cardona*, 158 Ill. 2d 403, 411 (1994). In the instant case, the conviction for knowing and intentional murder is the conviction for the most serious charge. See *People v. Cardona*, 158 Ill. 2d at 411.

¶ 40        Under Illinois Supreme Court Rule 615(b)(1), a reviewing court may "reverse, affirm, or modify the judgment or order from which the appeal is taken." Ill. S. Ct. R. 615(b)(1). Remand is unnecessary because we have the authority to directly order the clerk of the circuit court to make the necessary corrections to defendant's sentencing order. Ill. S. Ct. R. 615(b)(1); *People v. McCray*, 273 Ill. App. 3d 396, 403 (1995).

¶ 41        Accordingly, we direct the clerk of the circuit court to correct the mittimus to reflect a single conviction for the most serious charge of intentional and knowing murder where defendant intentionally killed the victim and during the commission of the offense personally discharged a firearm that proximately caused death. The defendant's conviction for shooting the victim knowing that such an act created a strong probability of death or great bodily harm shall be vacated by the clerk of the circuit court. The mittimus is to be corrected by the clerk of the circuit court to reflect a single conviction for intentional first degree murder pursuant to section 9-1(a)(1) of the Criminal Code of 1961 (720 ILCS 5/9-1(a)(1) (West 2008)).

¶ 42        Affirmed as modified.