**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 170447-U

Order filed July 21, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Appeal No. 3-17-0447 Circuit Nos. 16-TR-36052 16-TR-36053 |
| MARTHA AMAYA, | ) ) | Honorable Brian E. Barrett, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE O'BRIEN delivered the judgment of the court.
Justices Carter and Holdridge concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: (1) The court did not need to conduct a preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). (2) The court did not improperly consider defendant's proclamation of innocence as an aggravating factor. (3) The 12-month sentence of conditional discharge for improper lane usage was in excess of the maximum period of conditional discharge allowed under statute.

¶ 2    Defendant, Martha Amaya, appeals her sentences of 12 months' conditional discharge, arguing the court erred in (1) failing to conduct a preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984); (2) considering her declaration of innocence as an aggravating

factor; and (3) sentencing her in excess of the maximum period of conditional discharge for improper lane usage. We modify defendant's sentence for improper lane usage and otherwise affirm.

¶ 3                                          I. BACKGROUND

¶ 4        On May 17, 2016, defendant received traffic tickets for, *inter alia*, leaving the scene of an accident involving damage to a vehicle (625 ILCS 5/11-402 (West 2016)) and improper lane usage (*id.* § 11-709). The public defender was appointed to represent defendant.

¶ 5        The case proceeded to a bench trial. Emily Ragsdale testified that she was heading home from work in the late afternoon on May 17. She was driving her silver Mazda 3 iSport on Interstate 55 (I-55) in the left lane, and a black Ford Explorer was directly in front of her. The Explorer went into the middle lane and then the right lane. From the right lane, the Explorer then attempted to switch two lanes at once to get back into the left lane. While doing so, the Explorer hit Ragsdale's vehicle. The impact pushed her passenger-side mirror in and scratched up the entire passenger side of the vehicle. Ragsdale identified defendant as the driver of the Explorer. Defendant sped away in the Explorer. Ragsdale followed her and took a photograph of the vehicle and the license plate and then called the police. Another witness also reported the accident. Ragsdale exited the interstate in Joliet and waited for the police at a gas station.

¶ 6        Illinois State Police Trooper Greg Wilson testified that he arrived at the gas station to meet Ragsdale after the accident. Ragsdale told Wilson the circumstances of the accident and gave him the license plate number and a description of the vehicle and driver. He looked up the license plate number and located the address where the vehicle was registered. He went to the address, but it was abandoned. He eventually found defendant's correct address. He believed that he had another officer assist him in tracking down defendant's correct address. When he arrived, he noticed the

2

black Explorer in the driveway. He observed some silver paint transfer on the driver's side front quarter panel and side panel of the Explorer. He also noticed the two panels with the paint transfer were dust free, unlike the rest of the vehicle, as if someone had attempted to wipe down those specific areas. Wilson then approached the residence and knocked on the door. Defendant came to the door. Wilson interviewed defendant. Defendant stated that, though she was driving in the vicinity of the accident at the same time frame, she was not involved in the accident. He then issued defendant the traffic citations.

¶ 7    Defendant testified that on the day of the accident she was driving home from work on I-55 around 4 p.m. She did not come in contact with a Mazda and was not involved in an accident. Defendant stated that she never changes lanes, but always drove in the left lane. She was approached by officers at her home later that day, and they pointed out paint transfer on her Explorer. She said there was a little scratch on her driver's side door below the door handle, and she did not know how that got there.

¶ 8    On cross-examination, defendant stated there was no damage to her vehicle when she arrived home that day. She said that she went outside to look at the Explorer with Wilson. They walked all around the vehicle, and there was no damage. Defendant said she then went inside her home to retrieve her driver's license and insurance. When she came back outside, Wilson pointed out a scratch. Defendant stated that the scratch was five or six inches and looked "like it was keyed." She said that the officer had an intern with him, and either Wilson or the intern keyed her vehicle.

¶ 9    Wilson was recalled and stated that he did not remember whether anyone was with him when he went to defendant's home. He stated that neither he nor anybody who was with him keyed defendant's vehicle. He stated that the damage to defendant's vehicle amounted to a three to four

3

feet swipe of silver paint transfer. The paint transfer was lower than the driver's side mirror and was consistent with the damage to the Mazda.

¶ 10 The defense recalled defendant, and she stated that she took photographs of the Explorer while Wilson was writing her tickets. One of the photographs was entered into evidence, which solely showed the driver's side door handle, not the entire vehicle. It showed a thick mark under the handle, about three or four inches wide and about three times the length of the handle. It appeared that there may have been another mark a couple of inches below. Defendant again stated that Wilson or the person he was with made the mark on her vehicle.

¶ 11 The court found defendant guilty, stating that defendant's testimony that Wilson or someone with him had keyed her vehicle was "so highly unlikely that the testimony is incredible." The court stated that the photograph showed a significant mark. The court stated,

> "I do not believe the defendant when she says that mark was not there when I got home, somebody keyed my car, likely the trooper or his intern. I do not believe the defendant when she says I don't recall any incident on the highway. I do not believe the defendant when she says I was wholly unaware."

¶ 12 The case proceeded to a sentencing hearing. The State noted that defendant had a speeding ticket in 2013 and a ticket for improper lane usage in 2017. Defense counsel asked that defendant be placed on court supervision. Defendant addressed the court in a statement of allocution, solely stating, "I do have pictures, [Y]our Honor, of her vehicle and my vehicle. I retrieved them from my insurance company, and I have proof that my vehicle has no damage at all and her vehicle has extensive damage." The court stated that it considered the issues in aggravation and mitigation, the statement of defendant, and the facts of the case, and sentenced defendant to two concurrent

4

terms of 12 months' conditional discharge. After the court handed down the sentence, the following colloquy was held:

"THE DEFENDANT: The thing is I wasn't involved in no accident. I really was not, and I do have the pictures to prove that. Her damages do not coincide to my vehicle.

THE COURT: Okay. We have already had the trial. I have already made my findings.

THE DEFENDANT: I understand that. That's why I am saying, I mean, there's nothing I can do at this point."

¶ 13    Defendant filed a motion to reconsider sentence, solely arguing that the court did not give due consideration to the factors in mitigation. The court denied the motion, stating:

"The Court has considered the motion and the arguments thereon. The Court does recall this case. This case did proceed to trial. The Court did consider the issues of mitigation and aggravation at the time of sentencing, strongly considering the relevance and acceptability of a supervision on this matter. The Court did not find that supervision was eligible. Based on the evidence presented, based on the statements at trial, based on the sentencing hearing, the Court did not believe that [defendant] was eligible for supervision because [defendant] was persistent in her belief not only that she was involved in this accident, but her strong belief that the trooper had somehow caused the damage to her vehicle during an investigation.

In that situation, with that realistic belief being wholly incredible, I don't find that supervision is a necessary avenue for [defendant] and this is something that should be on [defendant's] record for future reference."

In ruling on defendant's motion for a new trial, the court again stated that it found defendant not credible.

¶ 14                                                    II. ANALYSIS

¶ 15       On appeal, defendant contends the court erred by (1) failing to conduct a preliminary *Krankel* inquiry, (2) considering her declaration of innocence to aggravate her sentence, and (3) sentencing her in excess of the maximum period of conditional discharge for improper lane usage. We will consider each argument in turn.

¶ 16                                    A. Preliminary *Krankel* Inquiry

¶ 17       Defendant first contends that the court should have conducted a preliminary *Krankel* inquiry. Because defendant did not raise a clear claim asserting ineffective assistance of counsel, the court did not need to conduct a preliminary inquiry.

¶ 18       A defendant who raises a *pro se* posttrial ineffective assistance of counsel claim is entitled to have the claim heard by the circuit court. *Krankel*, 102 Ill. 2d at 189. A two-step process exists for considering such a claim: (1) the circuit court makes a preliminary inquiry to examine the factual basis of the claim; and (2) if the allegations show counsel's potential neglect of the case, new counsel is appointed to represented the defendant in a full hearing on the claims. *People v. Moore*, 207 Ill. 2d 68, 78 (2003). In order to trigger a preliminary inquiry, the defendant must bring "a clear claim asserting ineffective assistance of counsel, either orally or in writing" to the attention of the court. *People v. Ayres*, 2017 IL 120071, ¶ 18.

¶ 19       Here, defendant contends that she made an implicit claim of ineffective assistance of counsel when she stated during sentencing, "I do have pictures, [Y]our Honor, of her vehicle and my vehicle. I retrieved them from my insurance company, and I have proof that my vehicle has no damage at all and her vehicle has extensive damage" and stated after sentencing, "The thing is I

6

wasn't involved in no accident. I really was not, and I do have the pictures to prove that. Her damages do not coincide to my vehicle." We find that this did not amount to a clear claim of ineffective assistance of counsel. Defendant made no mention of counsel or counsel's performance. See *People v. King*, 2017 IL App (1st) 142297, ¶ 20 (finding that the defendant was not entitled to a preliminary *Krankel* inquiry when, at sentencing, the defendant stated that a witness was not called, but did not mention her attorney); *People v. Taylor*, 237 Ill. 2d 68, 76 (2010) ("nowhere in defendant's statement at sentencing did he specifically complain about his attorney's performance, or expressly state he was claiming ineffective assistance of counsel."). While defendant contends that these statements meant that she had the photographs at the time of trial, had shown them to counsel, and counsel failed to present them at trial, we find no support for this in the record.

¶ 20     In coming to this conclusion, we reject defendant's reliance on *People v. Remsik-Miller*, 2012 IL App (2d) 100921. In *Remsik-Miller*, the defendant stated at a hearing on a posttrial motion, "I want to make sure that [defense counsel] is no longer listed as my attorney. I don't believe he did represent me to his fullest ability during my trial." *Id.* ¶ 5. The defendant in that case clearly mentioned both her attorney and her attorney's performance, unlike, here, where defendant mentioned neither.

¶ 21                                    B. Improper Factor

¶ 22     Next, defendant contends that the court improperly considered her declaration of innocence to aggravate her sentence. We find that the court properly considered defendant's credibility in sentencing her.

¶ 23    At the outset, we disagree with defendant that a court may not consider a defendant's declaration of innocence during sentencing. Our supreme court has held that a court may consider the defendant's protestation of innocence along with the rest of the evidence before it, stating:

> "The imposition of a criminal sentence should not be reduced to a litany of accepted and approved but meaningless words and phrases. In determining the appropriate sentence, the trial judge must consider all matters reflecting upon the defendant's personality, propensities, purposes, tendencies, and indeed every aspect of his life relevant to the sentencing proceeding. [Citations.] In some instances and under certain factual circumstances, a continued protestation of innocence and a lack of remorse may convey a strong message to the trial judge that the defendant is an unmitigated liar and at continued war with society. Such impressions garnered by the trial judge from the entire proceeding are proper factors to consider in imposing sentence. [The supreme court] has held that it was not improper for the trial court to consider its perception of the defendant's perjury in fixing the penalty to be imposed. [Citation.] *** [T]he impact of the defendant's testimony and statement upon the trial judge, assessed in light of the other information revealed during the course of the trial and the sentencing hearing, can hardly be said to be irrelevant to an appraisal of the defendant's character and his prospects for rehabilitation." *People v. Ward*, 113 Ill. 2d 516, 527-28 (1986).

Thus, while the defendant's protestation of innocence "must not be automatically and arbitrarily applied as aggravating factors," it can be considered along with the rest of the evidence with respect to a defendant's prospect for rehabilitation and restoration to a useful place in society. *Id.* at 529.

8

¶ 24　　　　Here, we cannot say that the court automatically and arbitrarily applied defendant's protestation of innocence as an aggravating factor. The court stated that it considered all the evidence presented. The court's comments show that it considered, not defendant's pure declaration of innocence, but instead her lack of credibility and her absurd insistence that the trooper had keyed her vehicle. This was properly considered when determining defendant's rehabilitative potential and the appropriate sentence.

¶ 25　　　　　　　　　　　　　　　　C. Conditional Discharge

¶ 26　　　　Lastly, defendant contends that the court erred in sentencing her to 12 month's conditional discharge for improper lane usage—a sentence in excess of the statutory maximum. We agree and reduce her sentence to the allowed six months of conditional discharge.

¶ 27　　　　At the outset, both parties agree that the issue is moot since defendant has completed her sentence. *People v. Roberson*, 212 Ill. 2d 430, 435 (2004). "A case is moot if the issues involved in the trial court have ceased to exist because intervening events have made it impossible for the reviewing court to grant effectual relief to the complaining party." *Id.* However, defendant asks us to consider the issue under the collateral consequences exception to the mootness doctrine, which applies "if a defendant may be subject to collateral legal consequences after serving the sentence." *People v. McNett*, 338 Ill. App. 3d 257, 260 (2003). Here, defendant's conviction and sentence must be reported to the Illinois Secretary of State, and the sentence imposed may affect her driving privileges in the future. We will, therefore, consider the issue.

¶ 28　　　　Upon our finding that the collateral consequences exception to the mootness doctrine applies, the State confesses error. The sentence for improper lane usage could not exceed six months conditional discharge since it was a petty offense. See 625 ILCS 5/11-709(a) (West 2016); 730 ILCS 5/5-4.5-75(b) (West 2016). While defendant forfeited the issue, it is reviewable under

9

the second prong of the plain error doctrine. *People v. Mitok*, 2018 IL App (3d) 160743, ¶ 13. We thus reduce defendant's sentence for improper lane usage to six months of conditional discharge. See Ill. S. Ct. R. 615(b)(4).

¶ 29                                    III. CONCLUSION

¶ 30         The judgment of the circuit court of Will County is affirmed as modified.

¶ 31         Affirmed as modified.