2020 IL App (2d) 180974-U
No. 2-18-0974
Order filed November 23, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-549 |
| ANTHONY J. HARRISON, | ) ) | Honorable James S. Cowlin, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Justices McLaren and Jorgensen concurred in the judgment.

**ORDER**

¶ 1   *Held*: When defendant made a posttrial *Krankel* claims that his trial counsel was ineffective for withdrawing an insanity defense, the trial court did not err in failing to query counsel or defendant about the allegation before declining to appoint *Krankel* counsel; the court could rely upon its knowledge of the complained-of conduct in concluding that defendant's ineffectiveness claims lacked merit.

¶ 2   Defendant, Anthony J. Harrison, appeals from the denial of his motion for new counsel under *People v. Krankel*, 102 Ill. 2d 181 (1984).  Because the trial court did not err in denying the *Krankel* motion, we affirm.

¶ 3                    I. BACKGROUND

¶ 4    On June 6, 2016, defendant called 911 and reported that he needed medical attention because he had tried to commit suicide by stabbing himself in the throat. Defendant also confessed that he had killed his wife two days before and that her body was in the house. When police arrived, they met defendant and observed wounds to his neck. They also located his wife's body in the house. Defendant was treated at a hospital for his injuries and then taken to the jail and processed. He was subsequently indicted in the circuit court of McHenry County on two counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2016)) for the stabbing death of his wife on June 4, 2016. Defendant waived jury trial and opted for a bench trial.

¶ 5    Before trial, the trial court granted defendant's request for a psychological examination. On November 1, 2016, defense counsel informed the court that she had received defendant's evaluation and was seeking further medical records. On September 13, 2017, defense counsel requested another evaluation of defendant to assess his state of mind at the time of the offense. The court ordered the evaluation. On December 26, 2017, counsel informed the court that she had received the additional evaluation. On January 5, 2018, counsel told the court that she needed to follow up with the evaluator. On July 11, 2018, counsel requested a continuance because she was following up with the medical professionals. On July 30, 2018, counsel filed a supplemental answer to discovery, indicating that defendant would present an insanity defense (720 ILCS 5/6-2 (West 2016)).

¶ 6    Also, on July 30, 2018, defense counsel filed a motion to dismiss. Defendant contended that the State had withheld or prevented the discovery of evidence when, following defendant's treatment for his suicide attempt on June 6, 2016, a police officer ignored the recommendation of a treating medical professional to transport defendant to a facility capable of treating his ongoing mental-health. Instead, defendant was transported to the county jail where he remained in custody.

The motion alleged that the officer's bad faith decision to ignore defendant's treatment recommendation prevented the defense from obtaining exculpatory, or at least potentially useful, material evidence related to an insanity defense.

¶ 7     On August 3, 2018, defense counsel informed the court that, after having several discussions with defendant, she was withdrawing the insanity defense.  The prosecutor, seeking to obviate possible "post-conviction" issues, suggested that the court query defendant if he had discussed withdrawing the insanity defense with his attorney, if he was aware that such was a matter of trial strategy, and if he agreed to withdraw the defense.

¶ 8     When the trial court asked defendant if he had heard what his attorney and the prosecutor said about withdrawing the defense, defendant said yes.  Defendant acknowledged that he had reviewed the mental-health evaluation and discussed it with his counsel.  Defendant stated that he knew that counsel had "allege[d] a possible defense of insanity" and that she was now indicating that he "wish[ed] to withdraw that defense."  Defendant also acknowledged that he understood that, by withdrawing the defense, he could not raise it at trial.  Defendant stated that he wished to waive the insanity defense, that he had not been forced to do so, and that he was doing so freely, willingly, and voluntarily.  The court found that defendant knowingly withdrew the insanity defense.

¶ 9     At the August 6, 2018, hearing on the motion to dismiss, defense counsel asserted that if defendant had been transported on June 6, 2016, to a mental health facility rather than to jail following his medical treatment, the defense could have obtained evidence relating to defendant's state of mind at the time of the offense.  Counsel suggested that, on June 6, 2016, there would have been "some evidence in [defendant's] head that would [have been] especially necessary and useful to the preparation of his defense."  Specifically, signs of insanity detected on June 6, 2016, would

have been material to the insanity defense. Counsel further argued that such evidence was important because, unlike physical evidence, a person's state of mind is fleeting and any evidence of defendant's state of mind on June 6, 2016, would not have been available later. Thus, counsel maintained that the "best time to get evidence of state of mind at the time of the offense [is] immediately after the offense occurs."

¶ 10    In denying the motion to dismiss, the trial court found the argument speculative whether psychiatric evaluation or treatment of defendant at the time would have resulted in exculpatory evidence. It further observed that defendant's transportation to jail did not preclude the assertion of an insanity defense, noting that defense counsel met with defendant "rather quickly" after he was jailed and moved for a psychological evaluation within a month. Thus, the court ruled that defendant was not denied due process.

¶ 11    Following defendant's bench trial, where he was found guilty of both counts, defendant filed a *pro se* motion for a new trial. He alleged, among other things, that his trial counsel was ineffective for failing to "raise the issue of incompetence when evidence of a *bona fide* doubt was disclosed." Defendant further alleged in the motion that trial counsel was ineffective for inadequately investigating and presenting evidence of his mental illness at trial. Defendant asked for a new trial with new counsel.

¶ 12    At the hearing on defendant's *pro se* motion, he stated that he would like "a *Krankel* procedure." The trial court noted that defendant's lead counsel had taken other employment and was not present. When the court asked defendant what his complaint was about trial counsel, defendant responded that trial counsel did not agree that his mental-health issues raised a concern about his competence. When the court asked defendant's other trial counsel if he had any comment, he answered no. The court then continued the matter for additional argument.

¶ 13    At the subsequent hearing, the trial court asked defendant if he had anything else to add to his motion, and defendant responded that the only other matter related to a statement he gave to the police.  In denying the motion for new counsel, the court found that it did not set out a meritorious claim for ineffective assistance of counsel.  Noting that neither the motion itself nor the supporting argument specified what evidence counsel failed to submit, the court ruled that the motion was conclusory.  The court commented that, "[a]s far as state of mind things, [it] would remind [defendant] that initially [his] counsel filed an insanity defense, and that was withdrawn."  The court added that it had questioned defendant whether he wanted to withdraw an insanity defense and that he had replied that he did not want to pursue such a defense.  Thus, the court found that there was no valid claim of ineffective assistance of counsel and declined to appoint new counsel.

¶ 14    The trial court merged the conviction on count II into the conviction on count I and sentenced defendant to 40 years in prison.  Defendant, in turn, filed a timely notice of appeal.

¶ 15                                  II. ANALYSIS

¶ 16    On appeal, defendant contends that the trial court erred in failing to appoint new counsel, because (1) the court failed to query trial counsel or defendant at the *Krankel* hearing about the allegations regarding the insanity defense; and (2) counsel, at the hearing on the motion to withdraw the insanity defense, appeared to have misapprehended the law regarding the defense.

¶ 17    The common-law procedure set forth in *People v. Krankel*, 102 Ill. 2d 181 (1984), is triggered when a defendant raises a *pro se* posttrial claim of ineffective assistance of counsel. *People v. Ayres*, 2017 IL 120071, ¶ 11.  The procedure serves the narrow purpose of allowing the trial court to decide whether to appoint independent counsel to argue a defendant's *pro se* ineffective-assistance claim. *Ayres*, 2017 IL 120071, ¶ 11. A *pro se* defendant is not required to

do anything more than bring his claim to the trial court's attention. *Ayres*, 2017 IL 120071, ¶ 11. However, the trial court is not required to automatically appoint new counsel when a defendant raises such a claim. *Ayres*, 2017 IL 120071, ¶ 11. Rather, the trial court must conduct some type of inquiry into the underlying factual basis, if any, of the claim. *Ayres*, 2017 IL 120071, ¶ 11. If the trial court determines that the claim lacks merit, or pertains only to a matter of trial strategy, then it need not appoint new counsel and may deny the motion. *Ayres*, 2017 IL 120071, ¶ 11. If, on the other hand, the allegations show possible neglect of the case, new counsel should be appointed. *Ayres*, 2017 IL 120071, ¶ 11.

¶ 18      In making the preliminary inquiry, the trial court is permitted to either (1) inquire of trial counsel regarding the defendant's allegations, (2) discuss the allegations with defendant, or (3) make its determination based on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations. *Ayres*, 2017 IL 210071, ¶ 12. The operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations. *Ayres*, 2017 IL 120071, ¶ 13. The goal of any *Krankel* proceeding is to facilitate the trial court's full consideration of a defendant's *pro se* claims and thereby potentially limit the issues on appeal. *Ayres*, 2017 IL 120071, ¶ 13. By initially evaluating the claim in a preliminary inquiry, the trial court creates the necessary record for any claim raised on appeal. *Ayres*, 2017 IL 120071, ¶ 13. The issue of whether the trial court properly conducted a preliminary *Krankel* inquiry presents a legal question subject to *de novo* review. *People v. Roddis*, 2020 IL 124352, ¶ 33.

¶ 19      In this case, once presented with defendant's claim that his trial counsel was ineffective for not presenting an insanity defense, the trial court conducted a preliminary *Krankel* inquiry. In considering the adequacy of the hearing and the correctness of the trial court's conclusion, we note

initially that the trial court understood defendant's ineffectiveness claim to concern the insanity defense, notwithstanding defendant's reference to his competency in his *pro se* motion. That defendant was not asserting a fitness/ineffective assistance claim is supported by reading the motion in its entirety, and defendant does not contend on appeal that he intended a fitness/ineffective assistance claim below.

¶ 20    Admittedly, in conducting the *Krankel* inquiry, the trial court neither discussed the allegations with lead trial counsel, who was not present,[1] nor with defendant. However, neither inquiry was necessary because the trial court was fully aware of trial counsel's performance and the insufficiency of defendant's allegations. The trial court knew that counsel had obtained at least two psychological evaluations of defendant and, after considering those evaluations, initially indicated that she was going to present an insanity defense. Though counsel subsequently withdrew the insanity defense, she informed the court, in defendant's presence, that she was doing so only after having discussed the matter with defendant several times. After the State asked the trial court to discuss with defendant withdrawing the insanity defense to avoid postconviction issues, the court did so. Defendant acknowledged in open court that trial counsel had discussed withdrawing the insanity defense with him and that he had reviewed the mental-health evaluation and had discussed it with counsel. He further stated that he understood that, even though counsel had originally alleged a potential insanity defense, she was now requesting to withdraw it. He also acknowledged that, by withdrawing the defense, he understood he could not later raise it at trial. He confirmed that he wished to waive the insanity defense and that he was doing so freely,

---

[1] We note that the trial court asked defendant's other trial counsel if he had any comment about defendant's motion, and he answered no.

willingly, and voluntarily. And indeed, this decision was consistent with an earlier letter penned by defendant while incarcerated where he wrote, "[m]y lawyers think I'm not guilty due to insanity. I disagree with them." The court found that defendant was knowingly abandoning his insanity defense.

¶ 21    Given what the trial court knew, we conclude that it had sufficient information and properly determined that defendant's ineffectiveness claim lacked arguable merit, or pertained only to a matter of trial strategy, such that defendant was not entitled to the appointment of new counsel. *Ayres*, 2017 IL 120071, ¶ 11.

¶ 22    Defendant further contends that counsel's statements at the hearing on the motion to dismiss showed that she was ineffective because she misapprehended the law regarding the insanity defense in believing that such a defense required expert testimony or a mental-health evaluation conducted as close to the offense as feasible. We disagree.

¶ 23    Defendant misconstrues counsel's statements, which were made in the context of a hearing on the motion to dismiss based on a denial of due process. To that end, counsel argued that, had a doctor evaluated defendant on June 6, 2016, or shortly thereafter, the evaluation would have produced material "necessary and useful in preparation of [an insanity] defense." Accordingly, counsel asserted that defendant was deprived of material exculpatory evidence (in which case proof of bad faith was unnecessary) or at least potentially useful evidence (in which case proof of bad faith was necessary). See *People v. Sutherland*, 223 Ill. 2d 187, 235-37 (2006) (citing *Arizona v. Youngblood*, 488 U.S. 51 (1988)). However, though counsel did emphasize the potential importance of the evidence and its timing in stressing the gravity of the due process violation, counsel did not go so far as to suggest that the evidence was indispensable to an insanity defense. See *People v. Burnett*, 2016 IL App (1st) 141033, ¶ 47 (neither psychiatric testimony nor medical

or lay opinion is necessary to establish insanity defense if the evidence otherwise shows serious mental defects or a substantial history of mental illness). Thus, counsel's statements at the hearing on the motion to dismiss did not demonstrate any misunderstanding of the law related to the insanity defense.

¶ 24 For the foregoing reasons, the trial court did not err in denying defendant's *Krankel* motion. The court conducted a proper inquiry under *Krankel* and correctly concluded that defendant's claim lacks merit and did not warrant appointment of *Krankel* counsel.

¶ 25                                III. CONCLUSION

¶ 26 For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 27 Affirmed.