NOTICE
Decision filed 02/03/21 The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 190238-U

NO. 5-19-0238

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Saline County. |
| v. | ) ) | No. 10-CF-324 |
| JAMES E. HOUSTON, | ) ) | Honorable Walden E. Morris, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CATES delivered the judgment of the court.
Presiding Justice Boie and Justice Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court did not err in denying the defendant's *pro se* posttrial claim of ineffective assistance of counsel following a preliminary *Krankel* inquiry because the defendant's claim lacked merit and the record does not show that trial counsel neglected the defendant's case.

¶ 2    The defendant, James E. Houston, appeals the trial court's denial of his *pro se* posttrial claim of ineffective assistance of counsel. The defendant argues that the trial court erred in not appointing new counsel to investigate and argue the defendant's allegation of ineffective assistance of counsel where the defendant showed a possibility that his trial counsel neglected the defendant's case. Specifically, the defendant asserts that his trial counsel failed to fully investigate the fact that the defendant ingested alcohol

1

and Klonopin on the day of the offense. The defendant argues that trial counsel should have considered this evidence as a basis for a potential defense or to provide an explanation of the defendant's mental state on the date of the offense. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4     On September 13, 2010, the defendant was charged with aggravated battery of a child (720 ILCS 5/12-4.3(a-5) (West 2010)), two counts of criminal damage to property (720 ILCS 5/21-1(1)(a) (West 2010)), domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2010)), two counts of endangering the health of a child (720 ILCS 5/12-21.6 (West 2010)), obstructing a peace officer (720 ILCS 5/31-1 (West 2010)), and disorderly conduct (720 ILCS 5/26-1(a)(1) (West 2010)). On October 14, 2014, the State dismissed the charges of domestic battery and disorderly conduct and filed new charges of aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2010)) and attempted first degree murder (720 ILCS 5/8-4(a) (West 2010)). On May 27, 2015, the defendant's case proceeded to a trial by jury.

¶ 5     On the evening before trial, the State disclosed a report to the defense, which contained statements made by the defendant and the victim, Amber Akins. These statements were alleged to have been made during interviews with Donna Hesterly, a Department of Children and Family Services worker, and Brian Harms of the Illinois State Police. On the morning of the second day of trial, the defendant filed a "Motion to Suppress Statements" seeking to suppress all evidence from the interviews conducted by Hesterly and Harms disclosed on the eve of trial. The trial court granted the defendant's

motion and precluded the State from presenting testimony regarding the contents of those interviews. At trial, the following evidence was presented.

¶ 6   On the night of September 7, 2010, Akins left her two-year-old son, D.S., in the care of the defendant while she went to class that evening. When she returned to the apartment, the defendant was lying in bed, and Akins saw alcohol beside the bed. Akins asked the defendant about D.S., and the defendant indicated that D.S. was asleep on the couch. The defendant and Akins began to argue because the defendant had been drinking alcohol while D.S. was in the care of the defendant. Eventually, D.S. woke up and came into the bedroom where the defendant and Akins were arguing. Akins noticed that D.S. had two black eyes, a "busted" lip, bruising on his face, and scratch marks on his shoulders. When Akins confronted the defendant about D.S.'s injuries, the defendant denied knowing what happened to D.S.

¶ 7   The argument between the defendant and Akins escalated, and the defendant grabbed Akins by the neck and pushed her against the wall. The defendant subsequently let go of Akins, and she picked up her son and went to the kitchen area. The defendant then pushed Akins and D.S. up against the refrigerator and began hitting Akins's head against the wall and refrigerator. The defendant then allowed Akins to put D.S. down, and Akins went to the bedroom to retrieve her phone. In the bedroom, the defendant shoved Akins onto the bed, facedown, and climbed on top of her, pushing her face into the mattress. He then put a pillow over Akins's head and pushed her head down, impeding Akins's ability to breathe. Akins testified that the defendant said, "[I]f I can't have you no one will." D.S. came into the bedroom and began hitting the defendant and

3

told him to stop. The defendant then stood up and, with his fists raised, went toward D.S. Akins ran to D.S. and picked him up. When the defendant confronted Akins, she pushed the defendant over an entertainment center and retreated to the bathroom with D.S., locking the door. The defendant punched on the outside of the bathroom door and "made it almost all the way through." Akins testified that the defendant also had a knife and threatened to "end" Akins and D.S. On cross-examination, trial counsel questioned Akins about an empty bottle of Klonopin. Akins testified that it was the defendant's prescription, and the bottle had been at least half full earlier that day.

¶ 8     Hesterly testified that she completed a substance abuse screen with the defendant on September 8, 2010. During this interview, the defendant admitted that he ingested a combination of alcohol and Klonopin on the date of the offense and suffered a blackout. Hesterly also testified that the defendant claimed he blacked out when questioned about D.S.'s injuries. The defendant objected based on the trial court's prior ruling on the defendant's motion to suppress, and the State requested to make an offer of proof. During the offer of proof, Hesterly testified that the defendant admitted to having blackout spells in the past after ingesting a combination of alcohol and Klonopin.

¶ 9     Joseph Hunt, the maintenance person for the apartment complex, testified that he went to Akins's apartment in response to a reported disturbance. When Hunt arrived at the apartment, another tenant was pointing at Akins's door, and Hunt heard a male screaming inside the apartment. Hunt knocked on the door to Akins's apartment, and the defendant opened the door. Hunt observed the defendant yelling and throwing items. The defendant also argued with Hunt. Hunt called law enforcement and told the defendant he

4

needed to leave. After Hunt called the police, the defendant left the apartment, and Hunt went outside with the defendant. Officer Justin McKinney arrived on the scene, and the defendant was arrested. Akins came outside and provided Officer McKinney an account of what happened. Akins then took D.S. to the hospital for evaluation and treatment of his injuries.

¶ 10    The jury found the defendant guilty of attempted first degree murder, aggravated domestic battery, aggravated battery of a child, two counts of criminal damage to property, and two counts of endangering the health of a child. The defendant was found not guilty of obstructing a peace officer.

¶ 11    At sentencing, the defendant did not present any evidence in mitigation, but trial counsel argued, *inter alia*, that the defendant's history of substance abuse and mental illness should be considered in mitigation of his sentence. Trial counsel further argued that the defendant had acknowledged that mixing alcohol and his medications causes a "Dr. Jekyll and Mr. Hyde type situation." Trial counsel argued that the evidence at trial exemplified this type of situation. Trial counsel also highlighted the defendant's mental health issues documented in the presentence investigation report. At the conclusion of the sentencing hearing, the trial court sentenced the defendant to 18 years in the Illinois Department of Corrections (IDOC) for attempted first degree murder, 7 years in IDOC for aggravated domestic battery, 5 years in IDOC for aggravated battery of a child, and 364 days in jail for each count of endangering the health of a child and criminal damage of property. All counts were ordered to run concurrently.

¶ 12 Following sentencing, trial counsel filed a motion to reduce sentence and a motion for new trial. The motion to reduce sentence alleged that the defendant had an "extensive mental health diagnosis," which the trial court failed to consider along with the defendant's use of medication. Following the hearing, the trial court took the matter under advisement. The defendant subsequently filed a *pro se* motion, titled "Motion for Judgment," in which the defendant asked the trial court to "dismiss" his trial counsel for "lack of representation." The defendant alleged that trial counsel had blocked phone calls from the defendant and his mother, and that the defendant had not had any contact with counsel following the sentencing hearing. No hearing was held on this motion. In a docket entry, the trial court denied the defendant's *pro se* posttrial motion and the motions filed by trial counsel.

¶ 13 The defendant appealed arguing that the trial court's denial of his *pro se* posttrial motion alleging ineffective assistance of counsel must be vacated and remanded because the trial court failed to conduct a preliminary inquiry into his posttrial claims. The State confessed the error, and this court remanded the defendant's case for a preliminary inquiry into the defendant's claims of ineffective assistance of counsel. *People v. Houston*, No. 5-16-0521 (Mar. 15, 2019) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 14 On remand, the trial court conducted a preliminary inquiry into the defendant's claims of ineffective assistance of counsel. At the hearing, the defendant informed the trial court that he had not included all his claims in the "Motion for Judgment," and the trial court allowed the defendant to orally present additional claims of ineffective

6

assistance of counsel. The defendant asserted, *inter alia*, that trial counsel was ineffective for failing to call a psychiatrist or psychologist as a witness to testify that his medication, when mixed with alcohol, "would have drastically impaired [the defendant's] judgment." In response, trial counsel stated that, regarding any defense and the defendant's mental health status, trial counsel and the defendant discussed the defendant's substance abuse on the date of the offense and the impact it had on him. Trial counsel further stated that no specific mental conditions were disclosed to him that he believed would be a defense. The trial court took the matter under advisement and subsequently entered a docket entry wherein the trial court found that the defendant's claims of ineffective assistance of counsel lacked merit. The docket entry reveals that the trial court considered the statements of both the defendant and trial counsel, the court file, and the trial court's knowledge of trial counsel's performance at trial. This appeal followed.

¶ 15                                    ANALYSIS

¶ 16    The defendant contends that the trial court should have appointed him new counsel following the preliminary inquiry because the defendant showed a possibility that trial counsel neglected the defendant's case. We disagree.

¶ 17    Following our supreme court's decision in *People v. Krankel*, 102 Ill. 2d 181 (1984), and its progeny, a common law procedure has developed for considering a defendant's *pro se* posttrial claim of ineffective assistance of counsel. *People v. Ayres*, 2017 IL 120071, ¶ 11. When a defendant makes a *pro se* posttrial claim of ineffective assistance of counsel, the trial court must conduct an inquiry into the factual basis of the defendant's claim. *Ayres*, 2017 IL 120071, ¶ 11. In a recent decision, our supreme court

7

held that the trial court may also consider the legal merits of the defendant's ineffective assistance of counsel claims in addition to the factual basis. *People v. Roddis*, 2020 IL 124352, ¶ 61. In making its preliminary inquiry, the trial court is permitted to discuss the defendant's allegations with both the defendant and trial counsel. *Ayres*, 2017 IL 120071, ¶ 12. The trial court is also permitted to make its determination based on its knowledge of trial counsel's performance at trial and the insufficiency of the defendant's allegations. *Ayres*, 2017 IL 120071, ¶ 12.

¶ 18    If the trial court concludes that the defendant's claims of ineffective assistance of counsel lack merit or pertain only to matters of trial strategy, the trial court need not appoint new counsel and may deny the *pro se* motion. *Ayres*, 2017 IL 120071, ¶ 11. A claim lacks merit if it is conclusory, misleading, legally immaterial, or does not bring a colorable claim of ineffective assistance of counsel to the trial court's attention. *People v. Robinson*, 2015 IL App (1st) 130837, ¶ 71. If, however, the defendant's allegations show that trial counsel possibly neglected the defendant's case, new counsel should be appointed. *Ayres*, 2017 IL 120071, ¶ 11. Where the trial court has properly conducted a preliminary inquiry into the defendant's allegations and reached a determination on the merits, we will reverse only if the trial court's decision was manifestly erroneous. *Robinson*, 2015 IL App (1st) 130837, ¶ 72. Manifest error occurs when an error is clearly evident, plain, and indisputable. *Robinson*, 2015 IL App (1st) 130837, ¶ 72.

¶ 19    Here, the defendant argues that he showed trial counsel possibly neglected the defendant's case by failing to investigate the defendant's ingestion of alcohol and

Klonopin on the date of the offense as a basis for a potential defense or an explanation of the defendant's mental state. Illinois law provides that:

> "A person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition is involuntarily produced and deprives him of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." 720 ILCS 5/6-3 (West 2014).

A defendant may claim involuntary intoxication if the intoxication was occasioned by trick, artifice or force, or if the defendant's intoxication results from an unwarned and unexpected side effect of a prescription drug. *People v. Hari*, 218 Ill. 2d 275, 292-94 (2006). Illinois law does not, however, recognize voluntary intoxication as a defense. See *People v. Rodgers*, 335 Ill. App. 3d 429, 433 n.1 (2002). Based on the record before this court, the defendant could not have asserted his ingestion of alcohol and Klonopin as a defense.

¶ 20 The record reveals that the defendant voluntarily ingested alcohol and Klonopin on the date of the offense, and that the defendant was also well aware that combining alcohol and Klonopin caused him to black out. Indeed, the defendant told investigators that the defendant suffered from blackouts prior to the date of the offense when he ingested a combination of alcohol and Klonopin. Thus, the record shows that the defendant could not claim involuntary intoxication as a defense. Moreover, trial counsel stated that he had discussed the defendant's substance abuse on the date of the offense and its impact on him. Because Illinois law does not recognize voluntary intoxication as a

defense, the defendant's claim was meritless, and the record does not show that trial counsel neglected the defendant's case as to this claim.

¶ 21 For the foregoing reasons, we affirm the trial court's order denying the defendant's *pro se* posttrial claim of ineffective assistance of counsel.

¶ 22 Affirmed.