**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 190263-U

Order filed January 11, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Henry County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal Nos. 3-19-0263, 3-19-0264 and 3-19-0265 |
| | ) ) | Circuit Nos. 17-CF-409, 17-CF-415 and 17-CF-434 |
| GERALD T. HORNE, | ) ) | Honorable |
| Defendant-Appellant. | ) ) | Terence M. Patton, Judge, Presiding. |

_____

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court.
Justices Lytton and McDade concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   This court has jurisdiction and declines to remand for a *Krankel* hearing. Even if the State and circuit court improperly commented on defendant's postarrest silence such conduct did not amount to reversible plain error.

¶ 2     Defendant, Gerald T. Horne, appeals his three convictions for felony driving while his license was revoked. He argues this court does not have jurisdiction over any of the convictions because there is a timely posttrial motion pending. Alternatively, if this court determines it has

jurisdiction, he argues remand is required for a hearing pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). Further, defendant argues that one of his convictions should be reversed because the court and the State improperly commented on his postarrest silence. We affirm.

¶ 3                                I. BACKGROUND

¶ 4        The State charged defendant with one count of felony driving while license revoked (625 ILCS 5/6-303(a), (d-2) (West 2016)) in each of the three separate cases, Nos. 17-CF-409, 17-CF-415 and 17-CF-434, arising from three separate incidents. The cases proceeded together, and bench trials were held on the same day.

¶ 5        In case No. 17-CF-415, Officer Christopher Lafriniere testified that he was on patrol on December 6, 2017. At approximately 2 a.m., he noticed a vehicle on Route 84 with a loud exhaust. As it drove by, Lafriniere could see one silhouette through the passenger's side window. He followed the vehicle and it abruptly turned into the fire station parking lot. Lafriniere "turned around in a driveway just on the driver's side of the vehicle." He saw the driver exit the driver's side of the vehicle and start checking the tires. Lafriniere did not see anyone else exit the vehicle "and there was no one else in the area." Only the driver's door was open. There were no other occupants in the vehicle. The State asked Lafriniere "Was there any mention of any other occupants around? Any—did you ever make contact with anyone other than the driver?" He responded "No, there was no one else in the area."

¶ 6        It was dark, but there were "quite a few streetlights" in the area, as well as parking lot and building lighting. From the time Lafriniere pulled behind the vehicle to the time he stopped in the parking lot next to the vehicle, there was "maybe five seconds' worth" of time where he did not have a continuous view of the driver and that was while going around a curve on Route 84.

¶ 7        Lafriniere conducted a motorist assist to see if there were any issues with the vehicle. Defendant told him that there was something wrong with the tire. The vehicle did not have a flat tire and Lafriniere did not see any reason why someone would be looking at the tire. Defendant provided Lafriniere with an Illinois identification (ID) card. After running defendant's information through dispatch, Lafriniere was informed that defendant had a warrant and his license was revoked. Lafriniere also ran a check on the registration, and it did not match the vehicle. He told defendant that the registration did not match. The State asked Lafriniere if defendant made any statements after being informed the registration did not match and he testified that defendant wanted a supervisor and the State police.

¶ 8        Officer Zachary Bollinger testified that on December 6, 2017, he was with Lafriniere and they pulled behind a vehicle driving on Route 84. They made contact with the driver of the vehicle, defendant. Bollinger had not previously seen defendant. He stated no one else was in the vehicle. Bollinger explained his basis for that conclusion by stating that:

> "as the vehicle pulled into the fire station parking lot, we pulled in onto Fifth Avenue directly after it and past it, saw him getting out of the driver's seat, and we turned around in the first driveway after the fire station. There is nothing in between, blocking view, between that driveway and the fire department."

There was no time during the turning process that they were unable to directly observe the vehicle. No one else exited the vehicle besides defendant and there was only one occupant from the time Bollinger first observed the vehicle until they pulled behind it in the parking lot. When asked if there was any way someone else could have exited the vehicle and walked away, Bollinger responded "I suppose in, like, a make-believe situation, a small person could have escaped out of

3

the passenger-side door and snuck away." He further stated that "Realistically, no, nobody else got out of the vehicle."

¶ 9          Adario Lawson testified that he was defendant's friend. On December 6, he picked defendant up from work in what he believed was defendant's vehicle. They were travelling on Route 6. A "tire started acting funny" so they pulled over at the fire station. Lawson exited the driver's side door of the vehicle and immediately walked down the street to the gas station to get "Fix a Flat," but he did not make it to the gas station. Lawson did not remember which direction he walked or what the weather was like. After a couple blocks, he turned around and saw the police talking to defendant. Lawson stated he "was going to turn around, but I thought, you know, he can handle it." He did not return to the vehicle and received a ride home. Lawson stated that he was not in any trouble but did not return to the vehicle because he was "not comfortable around police at all." Defendant did not drive the vehicle.

¶ 10         Lawson stated that he did not drive to a gas station rather than stop at the fire station because "like the tire had popped" so he did not want to go any further. There was no flat tire and Lawson never figured out what was wrong. Lawson did not tell the police he was driving "[b]ecause [he] didn't think it was going to be an issue."

¶ 11         Defendant testified that Lawson picked him up from work on December 6 in defendant's girlfriend's vehicle. Lawson always took him back and forth to work. Defendant was in the passenger seat of the vehicle, "slouched back a little bit." Defendant did not know the route they took but agreed that at some point they were on Route 84. They "heard a hard boom, like the tire had popped or something with *** the four-wheel drive." Lawson pulled into the fire station. Defendant told Lawson "just to get out; in case there was a flat, [they did not] want to be in this town, this little small town like this." As soon as the vehicle parked, Lawson exited the driver's

4

seat and started walking toward the gas station to get "Fix a Flat." Defendant exited the passenger side and started looking around to see if the tire was flat when the police arrived.

¶ 12    The police asked for defendant's ID, which he provided. Defense counsel asked him if he had "occasion to explain to the police officers that [Lawson] was the one that was driving and that [Lawson] was just going to get help and he might be back?" Defendant replied he did not. When asked if there was a reason he did not, defendant explained that he knew he had a warrant, he was frustrated with the police, and he did not want to answer questions so he "raised [his] right to ask for higher authority of these guys." Also, defendant thought Lawson "might come back." Defendant had not driven the vehicle that night.

¶ 13    On cross-examination, the State sought to confirm with defendant that he didn't mention anything about a driver, Lawson, to the police and he stated "No. I didn't want to mention anything about anything, because I was facing a warrant at the time. I was pretty upset. I lost my job. So, no, I did not answer any questions about that."

¶ 14    During closing argument, the State argued that "This was never mentioned that there was another friend. I certainly—if I were to have someone who was actually driving and I have a revoked driver's license, the first thing I would say was that there was another individual and locate that individual."

¶ 15    After setting forth reasons why it found Lawson was not credible, the court stated, "And the defendant doesn't mention anything to the police about Mr. Lawson being in there."

¶ 16    The court found defendant guilty in each case. On April 9, 2019, the court sentenced defendant to concurrent terms of 24 months' conditional discharge and 180 days in jail. Thereafter, defendant filed a motion to reconsider which the court denied on May 2.

¶ 17 In all three of the cases, defendant then filed, as a self-represented litigant, a notice of appeal on the form approved by the supreme court. This document was filed May 7, 2019. In the section provided to state the relief requested, defendant checked the boxes "reverse the trial court's judgment" and "other." Next to "other" he wrote "Inefective counsel/I ask that the decision to be reversed because I was getting harassed + followed by Kewanee police. They would follow me over a 15 block radius." In all three of the cases, defendant submitted a handwritten document, which was filed on May 9, 2019, although the handwritten date on it was May 5. There was no additional information in the record indicating when the document was sent to the court. The document was titled "Appeal" and stated, "I would like for the cases above to be appeal or request for over turne for the postconviction proceedings." It continued "I would like case over turne for *Ineffective counils* not puting more request and to best my case. *Bad council*. To have that's cases to the appellate court." The court made a docket entry in each case on May 9 indicating it reviewed a letter from defendant stating he wished to appeal and that a notice of appeal had already been filed. The appeals in all three cases have been consolidated.

¶ 18                                  II. ANALYSIS

¶ 19                                  A. Jurisdiction

¶ 20 Defendant first argues that this court lacks jurisdiction over each of the three cases involved in this consolidated appeal because he filed a timely posttrial motion in each case which is still pending. He bases this assertion on: (1) the references to ineffective assistance of counsel in the notice of appeal and the handwritten document which were both filed in each case; and (2) Illinois Supreme Court Rule 606(b) (eff. July 1, 2017), which provides that when a timely posttrial motion directed against the judgment has been filed, any notice of appeal filed before entry of the order disposing of such motion shall be stricken regardless of whether the postjudgment motion was

6

filed before or after the notice of appeal. Alternatively, he requests that if this court determines it has jurisdiction that we remand the matters for a *Krankel* hearing.

¶ 21 Here, even assuming defendant was attempting to raise ineffective assistance of counsel claims with the circuit court rather than with this court on appeal, this court has jurisdiction. Specifically, the court in *People v. Darr*, 2018 IL App (3d) 150562, ¶ 99, stated "[w]hen defendant filed his notice of appeal, even contemporaneously with his ineffectiveness claims, he had perfected his appeal and deprived the circuit court of jurisdiction." In that matter, as in the instant case, the defendant had filed the ineffectiveness claim contemporaneously with the notices of appeal, "apparently as a single filing." *Id.* ¶ 93. The court in *Darr* further determined that Rule 606(b) did not undermine the notice of appeal and return jurisdiction to the circuit court. *Id.* ¶ 95. Despite defendant's argument that *Darr* was decided incorrectly, we choose to follow *Darr* and therefore hold that defendant's ineffectiveness claims filed contemporaneously with, and after, the notices of appeal did not undermine the notices of appeal. Thus, this court has jurisdiction in all three cases. Additionally, we see no reason to remand for a *Krankel* hearing as "the court's failure to address defendant's ineffectiveness claims would not prevent him from raising those same claims on appeal," which defendant has not done. *Id.* ¶ 99. Because defendant does not otherwise present any challenge to his conviction or sentence in case Nos. 17-CF-409 or 17-CF-434, those judgments are affirmed.

¶ 22                                    B. Alleged Improper Comments

¶ 23 Defendant next argues that in case No. 17-CF-415, the court and the State both improperly commented on his postarrest silence by noting his failure to inform the police that Lawson was purportedly the driver. He acknowledges that he failed to preserve this issue (see *People v. Enoch*,

122 Ill. 2d 176, 186 (1988)) but argues that it amounts to reversible plain error because the evidence is closely balanced.

¶ 24    The plain error doctrine allows a forfeited error to be reviewed when "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant." *People v. Belknap*, 2014 IL 117094, ¶ 48. Generally, the first step in applying the plain error doctrine is to determine whether a clear or obvious error occurred. *People v. Sebby*, 2017 IL 119445, ¶ 49. But, even if we assume that defendant did not open the door regarding his failure to mention Lawson and that the comments were improper, we conclude the evidence was not closely balanced.

¶ 25    A matter is not necessarily closely balanced simply because it comes down to a credibility contest. See *Belknap*, 2014 IL 117094, ¶ 51 (noting in *People v. Adams*, 2012 IL 111168, the supreme court overturned the appellate court's decision that concluded the evidence was closely balanced because of the conflicting testimony between the defendant and the officers). When determining whether the evidence is closely balanced, "a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *Sebby*, 2017 IL 119445, ¶ 53.

¶ 26    Here, taking a qualitative, commonsense view of defendant and Lawson's version of events versus Lafriniere and Bollinger's version, we conclude that defendant and Lawson's version is not credible and plausible. Specifically, it is not plausible that, if Lawson was present and driving as stated by defendant and Lawson, that he could exit the driver's side of the vehicle and leave the area without Lafriniere or Bollinger seeing him. It is also not plausible that Lawson would take off immediately to find "Fix a Flat" without even checking if there was a flat tire. This is especially so considering it was 2 a.m. in December and ultimately, there was no flat tire. Additionally, if

8

Lawson was driving defendant back and forth to work all the time, it is not plausible that he would think that there would be no issue with who the driver was. On the other side, both Lafriniere and Bollinger's testimony was credible and plausible. This testimony established that the officers only saw one person in the vehicle as it drove by, the vehicle abruptly pulled into the fire station parking lot, nothing obstructed their view of the vehicle once it pulled into the parking lot, they only saw defendant exit the vehicle, defendant got out of the driver's door, and there was no one else in the area. Therefore, we conclude the evidence was not closely balanced and thus, the purportedly improper comments do not amount to reversible plain error. Based on the foregoing, we affirm the judgment in case No. 17-CF-415.

¶ 27                                  III. CONCLUSION

¶ 28            The judgment of the circuit court of Henry County is affirmed.

¶ 29            Affirmed.