NOTICE

Decision filed 08/05/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210169-U

NO. 5-21-0169

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Clay County. |
| | ) | |
| v. | ) | No. 18-CF-45 |
| | ) | |
| ALEXANDER JOSEPH BEAL, | ) | Honorable |
| | ) | Michael D. McHaney, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Justices Welch and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The judgment of the circuit court is affirmed where defendant did not assert any grounds to withdraw his plea, defendant's allegations of ineffective assistance of counsel were unsubstantiated, and defense counsel fully complied with Rule 604(d). Defendant's appointed counsel on appeal is granted leave to withdraw.

¶ 2    Defendant, Alexander Joseph Beal, pleaded guilty to first degree murder (720 ILCS 5/9-1(a)(2) (West 2018)) in exchange for a 40-year prison sentence and the dismissal of other charges. Defendant moved to withdraw his plea, and the circuit court denied the motion. Defendant appeals.

¶ 3    Defendant's appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), concluded that this appeal lacks merit. Accordingly, OSAD filed a motion to withdraw as counsel for defendant (see *Anders v. California*, 386 U.S. 738 (1967)) along with a brief in support of the motion. OSAD provided defendant with a copy of its *Anders* motion and brief.

1

Defendant filed a response. Upon review of the briefs and record in this case, we conclude that the instant appeal lacks merit. Accordingly, we grant OSAD leave to withdraw and affirm the judgment of the circuit court.

¶ 4                                    I. Background

¶ 5     The State initially charged defendant in a four-count indictment. Defendant pleaded guilty to count I, which alleged that on April 22, 2018, defendant, knowing that such acts created a strong probability of her death, caused A.R.S., a child under the age of 12, to suffer a violent strike or strikes to the back of the skull, causing her death.

¶ 6     Defense attorney Mark Tungate originally represented defendant. Attorney Roger White later replaced Tungate as defense counsel.  On two occasions when White requested continuances, the circuit court explained to defendant that, if his attorney sought a continuance, it would toll the speedy trial term. Each time, the court allowed defendant to consult with White, after which defendant agreed to the continuance.

¶ 7     The circuit court initially set trial for April 8, 2019. On February 28, 2019, the State received the autopsy report and forwarded it to White. On March 19, 2019, White withdrew. Attorney Jason Barnhart replaced White as defense counsel.

¶ 8     On December 6, 2019, defendant wrote to the state's attorney's office seeking a plea bargain. In his letter, defendant, accusing the prosecutor of "playing hardball" to burnish his reputation for political purposes, offered to plead guilty to second degree murder in exchange for a 15-year sentencing cap.

¶ 9     In January 2020, Barnhart moved to withdraw as counsel, claiming defendant left hostile messages on his answering machine and otherwise made demands of Barnhart that he was not comfortable pursuing as his attorney. The circuit court refused to replace Barnhart on the case,

2

noting that if defendant "wants to ignore the advice of an outstanding, excellent defense attorney, that's his problem. Can't fix stupid."

¶ 10     On March 13, 2020, the parties reached a plea agreement in which defendant would plead guilty to one count of first degree murder in exchange for a 40-year prison sentence. The circuit court read defendant the charge and the possible penalties, and defendant acknowledged that he understood. The court also reminded defendant that his jury trial was set to begin in 10 days and informed him that he would waive his rights to a trial, where he would be presumed innocent, if he pleaded guilty. The court also instructed defendant that pleading guilty would waive his right to subpoena witnesses, to confront his accusers, to testify, to not incriminate himself, and to hold the State to its burden of proof. Following the court's admonishments, defendant acknowledged that he wished to plead guilty and that no one had forced or threatened him to do so.

¶ 11     The circuit court then asked the State to a provide a factual basis for the offer. The State's factual basis generally showed that on April 22, 2018, police responded to an address in Clay City, Illinois, for a report of a two-year-old who suffered a head wound and was having difficulty breathing. Defendant initially said that he cared for A.R.S. when she fell and hit her head on the kitchen table and then later changed his story on several occasions. Initially, an ambulance took A.R.S. to Clay County Hospital, but she was later transported by helicopter to St. Louis Children's Hospital in St. Louis, Missouri.

¶ 12     Dr. Jamie Kondis, an attending physician with the Child Protection Program at St. Louis Children's Hospital, would testify that she treated A.R.S. on April 23, 2018. In her expert opinion, A.R.S. suffered bilateral subdural hematomas, bilateral skull fractures, bilateral retinal hemorrhages, hypoxic ischemic brain injury, a fractured left humerus, a fractured left radius, a circular lesion on her back, and bruising to her face, jaw, both ears, head, back, left upper arm, and

3

abdomen. Dr. Kondis would opine that the lesion on A.R.S.'s back was from a cigarette burn, her injuries were not accidental, and that her injuries could not have happened in the way defendant described. Rather, A.R.S.'s injuries were consistent with abusive head trauma, physical abuse, and battered child syndrome. Other experts, including the doctor who performed the autopsy, similarly concluded that A.R.S.'s death was the result of child abuse. Further evidence would show that defendant, who was the only adult with A.R.S. at the time, inflicted her injuries.

¶ 13 Following the State's factual basis, Barnhart stipulated to the State's proffered evidence. The circuit court found a factual basis, accepted the plea, and imposed the agreed-upon sentence of 40 years' imprisonment. The court then admonished defendant of his right to move to withdraw his plea and appeal pursuant to Illinois Supreme Court Rule 605(c) (eff. Oct. 1, 2001).

¶ 14 Shortly thereafter, defendant sent a posttrial letter to the circuit court to withdraw his guilty plea, claiming that plea counsel was ineffective. The court re-appointed Tungate, who filed an Illinois Supreme Court Rule 604(d) certificate (eff. July 1, 2017) and a formal motion to withdraw the plea. In particular, defendant's motion alleged that White was ineffective because he only asked for continuances while representing him and then withdraw 20 days before the original trial date. Defendant further alleged that, although a woman from Barnhart's office reviewed discovery with him, Barnhart never did. Further, defendant alleged that Barnhart did not believe his account of A.R.S.'s death, failed to obtain a psychiatric evaluation that could have provided an insanity defense or at least mitigating evidence, and also failed to investigate unspecified "things" or file any motions. The motion further alleged that neither White nor Barnhart advised defendant about his speedy trial right or that any delay for defense-requested continuances would be attributable to him. The motion finally asserted that defendant was coerced to plead guilty for two reasons:

4

(1) Barnhart told him he would be convicted at trial and receive a maximum sentence and (2) defendant was in jail for 688 days and was "just worn down and ready to get it over with."

¶ 15    At a hearing on defendant's motion to withdraw plea, Tungate offered several exhibits, including a list of  medications that defendant took while he awaited trial in jail and a series of grievances that he filed in jail to receive better treatment. The State called Barnhart, who testified that he discussed with defendant the statements of prosecution witnesses. In addition, Barnhart testified that crafting a trial strategy proved difficult because defendant offered multiple explanations for the victim's injuries. Barnhart initially sought to keep the State's experts from testifying by citing discovery delays, but when the court rejected his claims, Barnhart sought a defense expert. In particular, Barnhart testified that he explained to defendant that his chances of winning at trial were grim, unless Barnhart secured an expert to testify. Moreover, Barnhart testified that he discussed the speedy trial issues with defendant, reiterated that he went over discovery with defendant in jail, and opined that no legal grounds existed to move to suppress defendant's statements.

¶ 16    In response to why he did not seek a psychiatric evaluation of defendant, Barnhart explained:

> "From my first day of meeting Mr. Beal going forward, I never felt that he was unfit or had a psychological issue that would rise to the level of an affirmative defense. He was aware of where we were, what was going on. We discussed issues intelligently. I didn't see any psychological defects, again, that would rise to the level of an affirmative defense on the guilt or innocence phase. Had we gone to trial and Mr. Beal was found guilty, it has been my common practice to file a motion for psychological exam at that point in time, and maybe present it as a mitigating factor. But the guilt/innocence phase, it would have been irrelevant."

Barnhart also testified that, once it became clear that the defense expert concurred with the State's experts, "the strategy was to try to mitigate Mr. Beal's exposure to the number of years going

5

forward if convicted." Barnhart testified that the State initially offered defendant 50 years but later reduced its offer to 40 years' imprisonment.

¶ 17 Following a hearing on defendant's motion to withdraw plea, the circuit court denied the motion. Defendant timely appealed.

¶ 18                                            II. Analysis

¶ 19 On appeal, OSAD asserts several arguments. First, OSAD contends that defendant's argument is frivolous, where he asserts that the circuit court erred by denying his motion to withdraw the guilty plea. We agree. A defendant has no absolute right to withdraw a guilty plea and bears the burden of showing that withdrawal is necessary. *People v. Canterbury*, 313 Ill. App. 3d 914, 917-18 (2000). It is within the circuit court's discretion whether to permit a guilty plea to be withdrawn, and its decision will not be disturbed absent an abuse of that discretion. *Id.* at 918. A court should allow a defendant to withdraw his plea where it was entered based on a misapprehension of the facts or the law or because of misrepresentations by counsel, where there is doubt of defendant's guilt, where he has a defense worthy of consideration, or where the ends of justice will be better served by submitting the case to a jury. *Id.*

¶ 20 Initially, there is little question that the circuit court properly admonished defendant. Before accepting a guilty plea, the court must admonish a defendant (1) of the nature of the charge, (2) of the minimum and maximum sentence prescribed by law, (3) that defendant has the right to plead not guilty, and (4) that if defendant pleads guilty, there will not be a trial of any kind, so that by pleading guilty he waives the right to a trial by jury and the right to be confronted with the witnesses against him. Ill. S. Ct. R. 402 (eff. July 1, 2012). Here, the record reflects that the court offered defendant the four required admonishments.

6

¶ 21	Moreover, defendant's motion alleged that he pleaded guilty because his will was overborne by a 688-day stay in jail while he awaited trial, thus, he was coerced in part because he simply wanted to "get it over with." We are unconvinced by this argument. First, as the State pointed out at the hearing on defendant's motion, the circuit court reminded defendant that his trial was scheduled to begin 10 days later. Moreover, defendant's December 6, 2019, letter to the state's attorney's office undercuts his argument that he grudgingly accepted a plea bargain merely to "get it over with," where he offered to plead guilty to second degree murder in exchange for a 15-year sentencing cap. Thus, we cannot conclude that court erred by denying defendant's motion to withdraw the plea, where the record supports a finding that defendant willingly pleaded guilty.

¶ 22	Next, OSAD argues that defendant's argument is frivolous, where he argues Tungate failed to comply with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). We agree. Rule 604(d), read in pertinent part, requires:

> "The defendant's attorney shall file with the trial court a certificate stating that the attorney has consulted with the defendant either by phone, mail, or electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." *Id.*

Here, Tungate filed a certificate containing all necessary elements, as required under Rule 604(d).

¶ 23	Finally, OSAD contends that defendant's arguments are meritless, where he asserts plea counsel was ineffective and the circuit court procedurally erred in disposing of defendant's allegations when defendant raised these issues in his *pro se* posttrial letter to the court. We agree.

7

¶ 24 We first address defendant's claims of ineffectiveness. To demonstrate ineffective assistance of counsel, a defendant must show that (1) his lawyer's performance fell below an objective standard of reasonableness and (2) absent that deficient performance, the result of the proceeding would likely have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). More specifically, the defendant must demonstrate that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

¶ 25 Defendant argues White was ineffective because he failed to represent him when he asked for continuances and then withdrew 20 days before the original trial date. Importantly, White represented defendant while the parties awaited the results of the autopsy, which the State received approximately two weeks before White withdrew. There is no evidence that White's performance fell below an objective standard of reasonableness or that defendant was prejudiced as a result. Accordingly, this claim fails.

¶ 26 Next, defendant argues that Barnhart was ineffective in several respects, including that Barnhart (1) never reviewed discovery with him, (2) never seriously considered a defense strategy that A.R.S.'s injuries resulted from an accident, (3) failed to obtain a psychiatric evaluation that could have provided an insanity defense or at least mitigating evidence, (4) failed to investigate unspecified "things" or file any motions, and (5) coerced him to plead guilty. We reject defendant's claims of ineffective assistance of counsel against Barnhardt.

¶ 27 First, the circuit court could have reasonably believed, based on Barnhart's testimony, that Barnhart reviewed discovery with defendant. See *In re Jonathon C.B.*, 2011 IL 107750, ¶ 59 (trier of fact is best equipped to judge the credibility of witnesses). Moreover, defendant's motion

8

acknowledged that someone from Barnhart's office reviewed discovery with defendant. As such, this court cannot conclude that defendant was somehow prejudiced, where the record indicates discovery was reviewed with defendant. Second, Barnhart consulted an expert to testify that defendant's account of A.R.S.'s injuries was at least plausible; however, Barnhart shifted his focus to minimizing defendant's sentencing exposure "to the number of years going forward if convicted" after he learned this expert agreed with the State's experts. Accordingly, this court cannot conclude that Barnhart's performance fell below an objective standard of reasonableness based on the record.

¶ 28     Third, as it relates to the psychiatric evaluation, Barnhart testified that defendant did not have any psychological defects that led him to believe the results of an evaluation "would rise to the level of an affirmative defense on the guilt or innocence phase." Moreover, there is no evidence to refute Barnhart's opinion here. Accordingly, we cannot conclude that Barnhart's performance fell below an objective standard of reasonableness or that the result of the proceeding would likely have been different had Barnhart ordered a psychiatric evaluation. Fourth, Barnhart testified that crafting a trial strategy proved difficult because defendant offered multiple explanations for the victim's injuries. As such, we reject defendant's claim of ineffective assistance where defendant makes unsubstantiated claims that Barnhart did not investigate unspecified "things" or file any motions, where the record supports Barnhart's professional opinion that there was no legal basis for furthering defendant's case in light of the State's evidence against defendant. Lastly, we reject defendant's claim that he pleaded guilty because Barnhart told defendant he would likely be convicted at trial and sentenced to the maximum of 60 years. An attorney's honest assessment of a defendant's chances at trial cannot support a claim that counsel's ineffective assistance rendered a plea involuntary. *People v. Wilson*, 295 Ill. App. 3d 228, 237 (1998). Given the strength of the

9

State's case, defendant cannot show that Barnhart's opinion was unreasonable. Thus, defendant's claim of ineffectiveness fails.

¶ 29    Additionally, defendant argues that neither White nor Barnhart told him about his speedy trial right or that delays for defense-requested continuances would be attributable to him. We disagree. The record flatly refutes any suggestion that defendant was unaware of his speedy trial rights. The record supports a finding that the circuit court explained to defendant that seeking or agreeing to a continuance would toll the speedy-trial term, to which defendant stated that he agreed with the decision to seek a continuance.

¶ 30    Finally, defendant argues that the circuit court procedurally erred in disposing of defendant's allegations of ineffectiveness when defendant raised these issues in his *pro se* posttrial letter to the court. We disagree. A circuit court need not appoint new counsel every time a defendant claims in a *pro se* posttrial motion that counsel was ineffective. *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003) (citing *People v. Krankel*, 102 Ill. 2d 181, 187-89 (1984)). Rather, when a defendant presents such a claim, the circuit court should first examine the claim's factual basis. *Id.* If the court finds that the claim lacks merit or pertains only to matters of trial strategy, then the court may deny the *pro se* motion without appointing new counsel. *Id.* at 78. However, if the allegations show possible neglect of the case, the court should appoint new counsel to represent defendant at a subsequent hearing. *Id.*

¶ 31    Here, while the circuit court never held a *Krankel* hearing *per se*, it complied with *Moore* by appointing Tungate, who filed an amended motion and vigorously pursued claims that defendant received ineffective assistance of counsel. Accordingly, this court cannot conclude that the circuit court procedurally erred in disposing of defendant's allegations of ineffectiveness.

¶ 32                                    III. Conclusion

¶ 33    For the foregoing reasons, we grant OSAD's *Anders* motion and affirm the judgment of

the circuit court.


¶ 34    Motion granted; judgment affirmed.